# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RALPH LYNCH,**

       **Petitioner,**

    **v.**                                          **Case No. 2:07-cv-948**
                                                            **JUDGE GREGORY L. FROST**

**STUART HUDSON, Warden,**                     **Magistrate Judge Mark R. Abel**

       **Respondent.**

## OPINION AND ORDER

      Petitioner, a state prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Respondent's motion to dismiss procedurally defaulted claims (Doc. # 16), Petitioner's response in opposition (Doc. # 20), and Respondent's reply (Doc. # 22).

## I. Factual History

      On August 23, 1999, a jury in Hamilton County, Ohio convicted Petitioner for the aggravated murder of six-year old Mary Jennifer Love. After the mitigation phase of his trial, the jury recommended, and the trial court imposed, a sentence of death upon Petitioner. The Supreme Court of Ohio summarized the relevant facts and procedural history of this case in *State v. Lynch*, 98 Ohio St. 3d 514, 787 N.E.2d 1185 (2003):

>       Lynch lived alone in an apartment in Cincinnati. Mary Jennifer Love, a six-year-old girl, lived with her family in a neighboring apartment building and often played in the common area of the apartment complex.
>
>       On June 24, 1998, Lynch invited Love into his apartment, and they watched TV and ate popcorn. Lynch asked to see Love's genitals, and he took off her clothes. Lynch kissed and touched Love's genitals, and she started to scream. He then strangled Love, placed her body in his bathtub, and put his finger into her vagina. Lynch put Love's body into a cardboard box, put the box into his van, and dumped Love's body in a nearby wooded area.

Lynch was convicted of the aggravated murder of Love and sentenced to death.

### *State's case*

In June 1998, Lynch and Love lived in adjoining buildings at apartments on Arborwood Drive. Lynch met Love about one year earlier when she had "handed him flowers in the parking lot" of the apartment complex. Love and other neighborhood girls would sometimes play in Lynch's apartment building in bad weather. Love was described as a "very sweet little girl" who made friends easily and did not consider anybody a stranger.

On June 23, 1998, Lynch spent 40 to 45 minutes talking to Love on the inside stairway in front of his apartment. Lynch was seated on the steps, and Love was standing in front of him. According to Lynch's confession, "at one point * * * he lifted her up, and when he lifted her up, he leaned back and [while] holding her on an angle * * * her vaginal area was right in his face. And * * * when that happened, he became very excited and he obtained an erection."

Shortly after 3:00 p.m. on June 24, 1998, Love left her apartment and went outside to play. Love was wearing a one-piece swimming suit, shorts, and brown sandals.

According to Lynch's confession, around 4:00 p.m., Love entered Lynch's apartment building and Lynch invited her into his apartment. Lynch and Love sat on the floor, watched TV, and ate popcorn. Lynch told Love that he loved her, she gave Lynch a kiss on the cheek, and "that's when the feelings all started," meaning that he got an erection.

Lynch rubbed Love on the back, kissed her on the neck, and touched her belly button. They moved to his bedroom, and Love sat on the bed. Lynch asked Love if he could "see it," and she pulled her swimming suit to the side to show her genitals. Lynch started "licking * * * and kissing" her genitals, and his tongue went inside her vagina "a little."

Love started screaming after Lynch touched and kissed her. Lynch told Love not to be afraid and asked her whether he "could see her out of the bathing suit." Lynch then "took the swim suit off of her," and she was completely naked except for her shoes and socks. When Love started screaming again, Lynch strangled her by putting his hands around her neck and squeezing for "approximately * * * three minutes."

After strangling her, Lynch carried Love into the bathroom and put her in

the bathtub. Lynch poured some water into her mouth, and "she gasped and * * * the water went down in her lungs." Lynch concluded that Love was dead. He placed his finger into her vagina and then "started feeling bad about what * * * [he had] just done."

Lynch went into the kitchen, found a garbage bag, and placed it over Love's head so that he "couldn't see her face." Lynch then took Love's body out of the bathtub and placed her inside a cardboard vacuum cleaner box. Around 5:00 p.m., Lynch left his apartment carrying the cardboard box with Love's body inside. Lynch put the box inside his van and started "riding around looking for some place to dump her body."

Lynch dumped Love's body in an isolated and wooded area off Breezy Acres Drive, located one and one-half to two miles from Lynch's apartment. Lynch carried the box with Love's body into an area 60 to 70 feet from the road, removed her body from the box, and placed it under a rug that "just happened to be * * * laying [sic] back there." Then, Lynch dumped the cardboard box and Love's shoes and socks in a nearby dumpster. Lynch disposed of Love's swimming suit and shorts at another dumpster in Hamilton, Ohio. Shortly after 8:15 p.m., Lynch returned to his apartment.

Around 7:30 p.m. on June 24, Carol Williams, the victim's mother, went looking for Love after she had failed to show up for dinner. After Williams and other family members could not find Love, Williams notified the police around 9:00 p.m. that her daughter was missing. Around 10:00 p.m. on June 24, police began their search for Love. Additionally, many apartment residents searched for Love around the apartment complex and in a nearby wooded area.

Lynch joined the search after noticing that people were looking for Love around the apartment complex. During the search, Lynch mentioned to his neighbor, James Doyle, "It's a shame this has happened," and "I wonder where she could have roamed off to."

On June 26, as the search for Love continued, FBI Special Agent Tracey Heinlein interviewed Lynch as part of a neighborhood canvass. Lynch stated that his last contact with Love was on June 23 when he said hello to her in the parking lot. However, a neighbor told police that on June 23, he saw Lynch talking to Love on a stairway near Lynch's apartment.

On June 27, Detective Thomas Corbett interviewed Lynch about discrepancies in his statement to Heinlein. At Corbett's request, the interview was conducted at the police station, where Lynch completed a timeline detailing his whereabouts on June 24.

On June 27, Detective Dennis Goebel recognized Lynch when Lynch arrived at the police station. While Lynch was being interviewed, Goebel retrieved police records showing that Lynch had a prior conviction for contributing to the delinquency of a minor for exposing himself to two young girls.

After Corbett learned about Lynch's criminal history, Lynch was advised of his *Miranda* rights and waived those rights. During questioning, Lynch admitted having "a conversation with Mary Love" on the steps inside his apartment building. He admitted grabbing Love while he was seated on the steps, picking her up, becoming very excited, and getting an erection. After police completed their interview, Lynch, who was not under arrest, drove back to his apartment.

On July 3, police reinterviewed Lynch. After police again advised Lynch of his *Miranda* rights, and he again waived those rights, Lynch denied that he knew anything about Love's disappearance. As Lynch's interview proceeded, the police mentioned the need to find Love, the need for the family to grieve properly, and the need for Love to have a proper burial. Lynch then told the police, "She's on Breezy Acres."

Police drove Lynch to Breezy Acres Drive. On the way there, Lynch told police, "I choked her. She came up to my apartment, and that's where it happened."

Lynch provided police with detailed directions on where to find Love's body. He told them, "I put a bag over her head and she'll be wrapped and rolled in a carpet in a wooded area off the highway." Lynch told police, "Stop right here," when they came to the location of Love's body. He pointed through the car window and said, "It's right inside the trees, you'll find a carpet."

Following Lynch's directions, police went into the woods and found Love's skeletal remains underneath a carpet. A maggot-filled plastic garbage bag was covering the skull. While Lynch was in the police car at the scene, he told police, "I strangled her. I didn't mean to do it. I'm sorry. I need help. I'm sorry I lied to you."

Police returned with Lynch to police headquarters after discovering Love's remains. Lynch provided a taped, detailed account of the murder and signed the transcript of his taped confession that reflects the facts already described.

Police searched Lynch's apartment and found "an assortment of children's toys, stuffed animals in the bedroom closet on the shelf." A box of popcorn and a

roll of black plastic garbage bags were found in the cupboard.

After examining Love's remains, Dr. Robert Phalzgraf, Chief Deputy Coroner for Hamilton County, determined that Love was a homicide victim. Because Love's skeletal remains were "perfectly intact" and because of her age, Phalzgraf was able to rule out a "gunshot wound, stab wound, blunt trauma, [or] being struck by a hard object" as the cause of death. Phalzgraf concluded that Love's "cause of death was * * * asphyxia."

The defense presented no evidence during the guilt phase.

### *Trial Result*

The grand jury indicted Lynch on three counts of aggravated murder. Count 2 charged Lynch with aggravated murder while committing rape, Count 4 charged Lynch with aggravated murder while committing kidnapping, and Count 5 charged Lynch with aggravated murder by purposely causing the death of a child under 13. Additionally, Lynch was indicted for rape in Count 1, kidnapping in Count 3, and gross abuse of a corpse in Count 6.

The three counts of aggravated murder each contained four identical death-penalty specifications: murder for the purpose of escaping detection or apprehension for another offense, R.C. 2929.04(A)(3); principal offender in a murder while committing or attempting to commit rape, R.C. 2929.04(A)(7); principal offender in a murder while committing or attempting to commit kidnapping, R.C. 2929.04(A)(7); and principal offender in a murder of a child under 13 years of age, R.C. 2929.04(A)(9).

The jury convicted Lynch as charged and recommended the death penalty. Thereafter, the trial court sentenced Lynch to death, life imprisonment for rape, ten years' imprisonment for kidnapping, and 12 months' imprisonment for gross abuse of a corpse, with the sentences to run consecutively.

*Lynch*, 98 Ohio St. 3d at 515-18.

## II.  State Court Procedural History

### A.  Direct Appeal

Represented by attorneys Elizabeth Agar and Herbert Freeman, Petitioner appealed his

conviction and death sentence directly to the Supreme Court of Ohio.[1]  In a merit brief filed on

June 1, 2000, he raised the following twenty-two propositions of law:

> Proposition of Law No. 1:  Defense counsels' use of a mitigation witness who testified on cross-examination that defendant allegedly committed other crimes, and their failure to object to this damaging testimony on the grounds that it contained material that was inadmissible hearsay testimony concerning other acts, and that its prejudicial impact outweighed any possible probative value, denied defendant the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

> Proposition of Law No. 2: A trial court may not allow the prosecutor to use facts not in evidence to appeal to the passions and prejudices of the jury in violation of the accused's rights under the Sixth and Fourteenth Amendments to the United States Constitution and his concomitant rights under Article I Section 10 of the Ohio Constitution.

> Proposition of Law No. 3: Consideration of the nature and circumstances of the offense as aggravating factors, coupled with appeals to emotion and prejudice, violates Ohio's death penalty statute and defendant's right to be free from arbitrary infliction of the death penalty as guaranteed by the Eighth Amendment to the United States Constitution, and parallel state constitutional and statutory provisions.

> Proposition of Law No. 4:  The admission into evidence of statements elicited from defendant, which were not a product of his voluntary and knowing waiver of his rights to silence and to counsel, violates the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and parallel constitutional and statutory provisions of the State of Ohio.

> Proposition of Law No. 5: Evidence seized from defendant's home should have been suppressed when defendant's consent was coerced by the police, and any search conducted pursuant to it was, therefore, a violation of the Fourth Amendment to the United States Constitution and parallel state constitutional provisions.

---

[1]        Attorneys John Keller and Roxann Dieffenbach represented Petitioner at trial.

<u>Proposition of Law No. 6</u>: Admission of evidence which had no bearing on defendant's guilt, and which was only offered to establish defendant's bad character, violated Ohio Evidence Rule 404(b), and denied defendant a fair trial and freedom from cruel and unusual punishment in violation of the state and federal constitutions.

<u>Proposition of Law No. 7</u>: Imposition of the sentence of death on defendant violates defendant's rights under the Eighth Amendment and the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution, and his right to due course of law and punishment not cruel and unusual under the Ohio Constitution.

<u>Proposition of Law No. 8</u>: Defendant's sentence violates the Eighth and Fourteenth Amendments to the Constitution of the United States, and parallel state provisions, because it is disproportionately severe in relation to the crime committed, and to sentences visited upon others for the same crime in the same and other jurisdictions.

<u>Proposition of Law No. 9</u>: Defendant's death sentence must be set aside because it is disproportionately severe when compared to other cases in Hamilton County and in the State of Ohio in which capital sentencing decisions were made.

<u>Proposition of Law No. 10</u>:  Although multiple charges of aggravated murder may be submitted to the jury during the guilt phase of trial, where there is only one death charge there can be only one conviction, and presentation to the jury of multiple counts, with multiple specifications, violated defendant's right to due process and to be free from cruel and unusual punishment under the state and federal constitutions.

<u>Proposition of Law No. 11</u>: Although multiple specifications may be submitted to the jury during the first phase of trial, duplicative specifications must be merged before they are weighed against the aggravating circumstances, and presentation to the jury of multiple, duplicative specifications, violates defendant's right to due process and to be free from cruel and unusual punishment under the state and federal constitutions.

<u>Proposition of Law No. 12</u>: Exclusion of those opposed to the death penalty results in a jury biased in favor of guilt, and of death, denying defendant due process, equal protection and a fair and impartial jury.

<u>Proposition of Law No. 13</u>: Exclusion of evidence proffered by defendant in mitigation on the basis of state evidentiary rules violates defendant's right to due process where the proffered evidence is reliable and relevant to the question of whether the death penalty was appropriate in his case.

<u>Proposition of Law No. 14</u>: Refusal to allow defendant's unsworn statement to be given in a question and answer format violates defendant's right to due process and freedom from cruel and unusual punishment where defendant's mental deficiencies and difficulty in expressing himself made it impossible for him to make an effective presentation to the jury.

<u>Proposition of Law No. 15</u>: The judgments rendered against defendant by the trial court must be reversed because they were the product of collective consideration of admissible and inadmissible evidence, because the evidence presented was insufficient, as a matter of law, to support the verdicts, and because errors by the court, defense counsel and the prosecution combined to deny defendant a fair trial in violation of the Fourteenth Amendment to the Federal Constitution, corresponding provisions of the Ohio Constitution, and the laws and evidentiary rules of the State of Ohio.

<u>Proposition of Law No. 16</u>: A term of imprisonment can be made consecutive only to another term of imprisonment, therefore, a trial court cannot legally impose a term of imprisonment to be served consecutively to a sentence of death.

<u>Proposition of Law No. 17</u>: Ohio's statutory definition of reasonable doubt allows a jury to return convictions or death penalty recommendations based on a degree of proof which fails to meet the constitutional guarantee of due process of law embodied in the Fourteenth Amendment to the United States Constitution and corresponding language in the Ohio Constitution.

<u>Proposition of Law No. 18</u>: The statutorily mandated proportionality review currently being employed in Ohio does not comport with the requirements of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article One, Sections 10 and 16 of the Ohio Constitution, or the plain language of O.R.C. § 2929.05.

<u>Proposition of Law No. 19</u>: Denial of requested instructions on lesser included offenses was reversible error when the evidence would have supported acquittal

on the charges in the indictment, but conviction of the lesser charge.

Proposition of Law No. 20: Denial of defendant's request for a change of venue, in light of the extensive publicity surrounding this case, denied defendant due process of law and a fair determination by an impartial tribunal in violation of his rights under the Eighth and Fourteenth Amendments of the United States Constitution, and parallel state constitutional provisions.

Proposition of Law No. 21: Denial of requested merger of the rape and kidnapping charges and specifications was erroneous when any restraint of the victim's liberty was merely incidental to the rape offense, and there was no separate animus for the restraint.

Proposition of Law No. 22: Individual and collective errors, whether raised by appellate counsel or not, mandate reversal of defendant's conviction and sentence.

Proposition of Law No. 23: Motion to vacate death sentence of defendant-appellant Ralph Lynch pursuant to Atkins v. Virginia, 122 S.Ct. 2242 (2002).

(App. Vol. 3, at 19.)  On May 14, 2003, the Ohio Supreme Court issued a decision rejecting

Petitioner's propositions of law and affirming the judgment against him.  *State v. Lynch*, 98 Ohio

St. 3d 514, 787 N.E.2d 1195 (2003).

## B.  Postconviction Proceedings Under Ohio Rev. Code § 2953.21

On August 15, 2000, Petitioner filed a petition for postconviction relief in the trial court.

(App. Vol. 4, at 22.)  Represented by the Ohio Public Defender, Petitioner raised the following

twenty-four grounds for relief:

First Ground for Relief: Petitioner Lynch's conviction and sentence are void or voidable because Hamilton County seeks to overprosecute death cases, which results in an arbitrary, unreasonable and capricious imposition of the death penalty.

Second Ground for Relief: Petitioner Lynch's conviction and sentence are void or

voidable because Hamilton County underrepresents minorities in their grand juries. The jury selection process utilized in Hamilton County results in petit and grand juries that are biased geographically, racially, culturally, and socio-economically.

Third Ground for Relief: Petitioner Lynch's conviction and sentence are void or voidable because the process utilized in Hamilton County to select the foremen of grand juries that return capital indictments is biased geographically, racially, culturally, and socioeconomically.

Fourth Ground for Relief: Petitioner Lynch's convictions and sentences are void or voidable because trial counsel failed to challenge the methods of selecting a grand jury foreperson in Hamilton County and in Ohio. This failure constituted ineffectiveness which prejudiced Petitioner Lynch.

Fifth Ground for Relief: Petitioner Lynch's conviction and/or sentence are void or voidable because the systematic exclusion of African-Americans from his prospective petit jury panel violated his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution, and Article I, Sections 2, 5, 9, and 10 of the Ohio Constitution.

Sixth Ground for Relief: Petitioner's conviction and death sentence are void or voidable because his counsel were constitutionally ineffective when they failed to object to unlawful and unconstitutional jury instructions. There can not be and there is not any objectively reasonable tactical basis for Petitioner's trial counsel's failure to raise these objections. Moreover, reasonably competent capital defense trial counsel would have – and Petitioner's trial counsel should have – requested jury instructions that complied with the constitutional, legal, statutory and procedural requirements that underlie the constitutional counterparts to the defective instructions that Petitioner's counsel failed to raise during his trial.

Seventh Ground for Relief: Petitioner's convictions and sentences are voidable because the trial prosecutors suppressed material exculpatory and impeachment evidence in violation of Petitioner's rights pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the united States Constitution.

Eighth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable due to the ineffective assistance of counsel he received during the voir dire stage of his capital trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 9, 10, and

16 of the Ohio Constitution and he was thereby prejudiced.

Ninth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable due to the ineffective assistance of counsel he received during the suppression hearing of his capital trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution and he was thereby prejudiced.

Tenth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable because the statements he gave to law enforcement personnel of the Hamilton County Sheriff's Office were improperly admitted at trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution and he was thereby prejudiced.

Eleventh Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable because the June 27 and July 3, 1998 consents to search his residence and automobile that he signed, were not knowingly, intelligently or voluntarily entered into, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution and he was thereby prejudiced.

Twelfth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable due to the ineffective assistance of counsel he received during the trial phase of his capital trial, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 16 of the Ohio Constitution. (Failure to present testimony from mental health professional to support conviction of lesser included offense of involuntary manslaughter)

Thirteenth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel during the mitigation phase of his capital trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D) and he was thereby prejudiced. (Counsel presented testimony from an incompetent expert– Dr. Bley).

Fourteenth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel during the mitigation phase of his capital trial as guaranteed by the Sixth and Fourteenth

Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D) and he was thereby prejudiced. (Counsel presented testimony from an incompetent expert– Dr. Tureen).

Fifteenth Ground for Relief:  Petitioner Lynch's convictions and sentences are void and/or voidable because he was denied effective assistance of counsel during the mitigation phase of his capital trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, C.P. Sup. R. 20 (IV)(D) and he was thereby prejudiced. (Failure to request appointment of an expert in mental retardation).

Sixteenth Ground for Relief:  Petitioner Lynch's convictions and/or sentences are void or voidable because he was denied the effective assistance of counsel in the mitigation phase of his capital trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution and he was thereby prejudiced.  (Failure to investigate Petitioner's background for mitigating factors).

Seventeenth Ground for Relief:  Petitioner Lynch's convictions and/or sentences are void or voidable because he was denied the effective assistance of counsel in the mitigation phase of his capital trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution and he was thereby prejudiced.  (Failure to competently question experts).

Eighteenth Ground for Relief:  Petitioner Lynch's convictions and/or sentences are void or voidable because he was denied the effective assistance of counsel in the mitigation phase of his capital trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.  (Failure to object to prosecutorial misconduct during penalty phase closing arguments).

Nineteenth Ground for Relief: Petitioner Lynch's conviction and sentence are void or voidable because of the substantive claims for relief raised in Grounds one through twenty-three.  However, the postconviction process afforded him in Ohio provides an inadequate corrective process to litigate his claims.

Twentieth Ground for Relief: Petitioner Lynch's convictions and/or sentences are void or voidable because the death penalty is disproportionately meted out to those defendants who are racial minorities.  This disparity exists in Hamilton

County and the State of Ohio. The disparity was in effect in Hamilton County, Ohio at the time of Petitioner's capital trial.

Twenty-first Ground for Relief: The judgment and sentence against Petitioner are void or voidable because the death penalty as administered by electrocution in the state of Ohio violates his constitutional rights to protection from cruel and unusual punishment and to due process of law. U.S. Const. Amends. VIII, IX, XIV; Ohio Const. Art. I §§ 9, 10, 16; Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998) (five justices holding that the Due Process Clause protects the "life" interest at issue in capital cases).

Twenty-second Ground for Relief: The judgment and sentence against Petitioner are void or voidable because the death penalty as administered by lethal injection in the state of Ohio violates his constitutional rights to protection from cruel and unusual punishment and to due process of law. U.S. Const. Amends. VIII, IX, XIV; Ohio Const. Art. I §§ 9, 10, 16; Ohio Adult Parole Authority v. Woodard, 523 U.S. 272 (1998) (five justices holding that the Due Process Clause protects the "life" interest at issue in capital cases).

Twenty-third Ground for Relief: Petitioner Lynch's judgment and sentence are void or voidable because, assuming *arguendo* that none of the Grounds for Relief in his Postconviction Petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions as presented in the Petition's foregoing paragraphs have been prejudicial and have denied Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.

Twenty-fourth Ground for Relief: Petitioner Lynch's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel at the penalty phase of his capital trial in violation of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 5, 9, 10, 16 and 20 of the Ohio Constitution. (Failure to present adjustment to prison life as a mitigating factor).[2]

(App. Vol. 4, at 22.)

---

[2] The page of the postconviction petition setting forth Petitioner's twenty-fourth ground for relief is missing from Volume 7 of the Appendix to the Return of Writ.

On December 22, 2000, the state trial court issued a decision rejecting Petitioner's postconviction action. *State v. Lynch*, Case No. B-9804522 (Hamilton Cty. Common Pleas Ct., Dec. 22, 2000); (App. Vol. 7, at 324.) However, the clerk of court failed to serve a copy of the trial court's final appealable order on Petitioner or his counsel. On February 21, 2001, the trial court reissued the findings of fact and conclusions of law rejecting Petitioner's assignments of error and served copies of the order on Petitioner and his counsel. *State v. Lynch*, Case No. B-9804522 (Hamilton Cty. Common Pleas Ct., Feb. 21, 2001); (App. Vol. 7, at 364.)

Petitioner appealed to the Court of Appeals for the First Appellate District, and in a merit brief filed on July 9, 2001, raised the following assignments of error:

Assignment of Error No. I: The trial court erred in granting appellee's motion to dismiss in violation of Rule Fifty-Six of the Ohio Rules of Civil Procedure and State v. Milanovich (1975), 42 Ohio St. 2d 46, 325 N.E.2d 540.

Assignment of Error No. II: The trial court erred in dismissing appellant's claims on the basis of *res judicata* in violation of appellant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Assignment of Error No.III: The trial court erred in dismissing appellant's postconviction petition, where he presented sufficient operative facts to merit an evidentiary hearing and discovery.

Assignment of Error No. IV: Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process or equal protection under the Fourteenth Amendment.

Assignment of Error No. V: The trial court erred when it adopted appellee's proposed findings of fact and conclusions of law in violation of Ohio Revised Code Section 2953.21(C), Local Rule 17(A), and the Fifth and Fourteenth Amendments to the United States Constitution.

Assignment of Error No. VI: The cumulative error of appellant's substantive

14

claims merit reversal or remand for a proper postconviction process.

(App. Vol. 8, at 17.)

On December 21, 2001, the appellate court issued a decision rejecting Petitioner's assignments of error and affirming the judgment of the trial court. *State v. Lynch*, No. C-010209, 2001 WL 1635760 (Oh. App. 1st Dist. Dec. 21, 2001); (App. Vol. 8, at 351.)

Petitioner appealed the appellate court's decision to the Supreme Court of Ohio, filing a memorandum in support of jurisdiction on February 1, 2002, that raised the following propositions of law:

> Proposition of Law No. I: The trial court erred in dismissing appellant's postconviction petition, where he presented sufficient operative facts to merit an evidentiary hearing and discovery in violation of appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

> Proposition of Law No. II: Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process or equal protection under the Fourteenth Amendment.

> Proposition of Law No. III: The cumulative error of appellant's substantive claims merits reversal or remand for a proper postconviction process in accord with appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(App. Vol. 9, at 7.) On July 30, 2003, the Ohio Supreme Court issued an entry summarily declining to accept jurisdiction over Petitioner's appeal. (App. Vol. 9, at 297.)

### C. Atkins Proceedings

After the United States Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002), and the decision of the Ohio Supreme Court in *State v. Lott*, 97 Ohio St. 3d 303, 779

N.E.2d 1011 (2002), Petitioner filed a postconviction petition with the trial court raising the

following ground for relief:

> First Ground for Relief: Petitioner Lynch's sentence of death is void and/or
> voidable because he is mentally retarded and the United States Supreme Court has
> ruled that it is unconstitutional for a mentally retarded individual to be executed.
> Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242 (2002); State v. Lott, 97 Ohio St.
> 3d 303 (2002). It is a violation of Petitioner's right to be free from cruel and
> unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to
> the United States Constitution for him to be sentenced to death. Petitioner Lynch
> must be resentenced to a term of life imprisonment.

(App. Vol. 10, at 40.)

On June 17, 2005, the trial court held an evidentiary hearing, during which both parties

presented evidence. On October 24, 2005, the trial court rejected Petitioner's *Atkins* claim.

(App. Vol. 10, at 292.)

Petitioner appealed the decision of the trial court, and on February 24, 2006, he filed a

merit brief setting forth one assignment of error:

> Assignment of Error No. I: The trial court erred when it denied Appellant's claim
> that he is mentally retarded pursuant to Atkins v. Virginia, 536 U.S. 304, 122
> S.Ct. 2242 (2002). Appellant's death sentence violates the constitution because
> he is in fact mildly mentally retarded. U.S. Const. Amends. VIII, XIV; Ohio
> Const. Art. I § 9, 10.

(App. Vol. 13, at 49.) The court of appeals affirmed the decision of the trial court, finding that

Petitioner had failed to prove by a preponderance of the evidence that he is mentally retarded.

*State v. Lynch*, No. C-050914, 2006 WL 2788504, at *3 (Oh. App. 1st Dist. Sept. 29, 2006);

(App. Vol. 13, at 151.)

Petitioner appealed the judgment of the court of appeals to the Ohio Supreme Court,

filing a memorandum in support of jurisdiction on November 9, 2006. Petitioner raised the

following proposition of law:

> Proposition of Law No. I: The trial court erred when it denied Appellant's claim that he is mildly mentally retarded pursuant to <u>Atkins v. Virginia</u>, 536 U.S. 304, 122 S.Ct. 2242 (2002) and <u>State v. Lott</u>, 97 Ohio St. 3d 303 (2002). Appellant's death sentence violates the constitution because he is in fact mildly mentally retarded. U.S. Const. Amends. VIII, XIV; Ohio Const. Art. I, § 9, 10.

(App. Vol. 14, at 6.) The Ohio Supreme Court declined to exercise jurisdiction. (App. Vol. 14, at 61.)

### III.  Habeas Corpus Proceedings

On June 26, 2007, Petitioner initiated the instant proceedings by filing a notice of intent to file a habeas corpus petition, a motion to proceed *in forma pauperis*, and a motion for appointment of counsel. On August 2, 2007, the Court appointed Attorneys Andrew Avellano and Kathryn Sandford to serve as Petitioner's counsel. (Doc. # 5.)

On February 15, 2008, Petitioner filed a petition for writ of habeas corpus raising twenty grounds for relief:

> First Ground for Relief:  Petitioner is mentally retarded and thus, ineligible for the death penalty, violating petitioner's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

> Second Ground for Relief: Petitioner's trial counsel were ineffective for failing to secure the appointment of a mental retardation expert to testify at the mitigation phase in violation of petitioner's rights to due process and the effective assistance of counsel as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

> Third Ground for Relief: Trial counsel were ineffective in presenting a witness with damaging testimony about petitioner, denying petitioner the effective assistance of counsel and due process in violation of the Sixth and Fourteenth

Amendments to the United States Constitution.

Fourth Ground for Relief: Petitioner was denied the effective assistance of counsel at the voir dire stage of his trial resulting in a denial of a fair and impartial jury as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

Fifth Ground for Relief: Petitioner's trial counsel rendered ineffective assistance by failing to present testimony from a mental health professional to support the motions to suppress. Petitioner's rights to the effective assistance of counsel and due process as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution were violated.

Sixth Ground for Relief: Trial counsel were ineffective for failing to present testimony from a mental health expert to support petitioner being convicted of a lesser offense. Petitioner's rights to due process and the effective assistance of counsel as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution were violated.

Seventh Ground for Relief: Petitioner was denied the effective assistance of counsel at the mitigation phase by counsels' failure to investigate, prepare and present valuable testimony and records to support a sentence less than death. Petitioner's rights to a fair trial, due process and the effective assistance of counsel as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution were violated.

Eighth Ground for Relief: The evidence presented was insufficient, as a matter of law, to support the verdicts, denying petitioner due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Ninth Ground for Relief: The prosecutor used facts not in evidence to appeal to the passions and prejudices of the jury in violation of petitioner's rights to due process and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

Tenth Ground for Relief: Petitioner's waiver of his Miranda rights and consent to search were not knowing, intelligent and voluntary in violation of petitioner's rights to a fair trial and due process as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

<u>Eleventh Ground for Relief</u>: Admission of evidence which had no bearing on petitioner's guilt, and which was only offered to establish petitioner's bad character denied petitioner a fair trial and freedom from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

<u>Twelfth Ground for Relief</u>: The trial court erred by refusing to allow petitioner's proffered evidence in mitigation demonstrating that he would be incarcerated for life.  Petitioner's rights to a fair trial and due process as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution were violated.

<u>Thirteenth Ground for Relief</u>: The trial court's refusal to allow petitioner's unsworn statement to be given in a question and answer format where petitioner's mental deficiencies and difficulty in expressing himself made it impossible for him to make an effective presentation to the jury violated his rights to due process and a fair trial in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

<u>Fourteenth Ground for Relief</u>: The trial Court erred by denying petitioner's motions on instructional issues in the trial phase, violating petitioner's rights to due process and a fair trial as guaranteed by the Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

    (A)    Denial of requested instructions on lesser included offenses was reversible error when the evidence would have supported acquittal on the charges in the indictment but conviction of the lesser charge.

    (B)    Denial of requested merger of the rape and kidnapping charges and specifications was erroneous when any restraint of the victim's liberty was merely incidental to the rape offense, and there was no separate animus for the restraint.

<u>Fifteenth Ground for Relief</u>: Although multiple charges of aggravated murder may be submitted to the jury during the guilt phase of trial, where there is only one death charge there can be only one conviction, and presentation to the jury of multiple counts, with multiple specifications, violates petitioner's right to due process and to be free from cruel and unusual punishment guaranteed by the Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

Sixteenth Ground for Relief: Although multiple specifications may be submitted to the jury during the first phase of trial, duplicative specifications must be merged before they are weighed against the aggravating circumstances, and presentation to the jury of multiple, duplicative specifications, violates petitioner's rights to due process and to be free from cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

Seventeenth Ground for Relief: Imposition of the sentence of death on petitioner violates his rights to due process and equal protection as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

Eighteenth Ground for Relief: Petitioner's sentence is disproportionately severe in relation to the crime committed, and to sentences imposed upon others for the same crime in the same and other jurisdictions in violation of his rights to due process and equal protection as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

Nineteenth Ground for Relief: The statutorily mandated proportionality review currently being employed in Ohio does not comport with the requirements of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

Twentieth Ground for Relief: The death penalty as administered by lethal injection in the state of Ohio violates petitioner's rights to be free from cruel and unusual punishment and to due process of law under the Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

(Doc. # 11.)

Pursuant to the Court's First Scheduling Order, Respondent filed the instant motion to dismiss procedurally defaulted claims on April 1, 2008. (Doc. # 16.) Petitioner filed a response on May 1, 2008 (Doc. # 20), and Respondent filed a reply on June 2, 2008. (Doc. # 22.) Respondent's motion to dismiss procedurally defaulted claims is currently before the Court for consideration.

## IV.  Procedural Default Discussion

In the motion to dismiss, Respondent alleges that several of Petitioner's claims, in their entirety or in part, are subject to procedural default. According to Respondent, Petitioner defaulted ground four and part of ground five because he raised those claims in postconviction instead of on direct appeal in violation of Ohio's doctrine of *res judicata*, and Petitioner defaulted the remainder of ground five because he failed to present it to the Ohio courts. Respondent insists that Petitioner defaulted paragraphs 89 and 90 of his ninth ground for relief, as well as his eleventh and sixteenth grounds for relief, because Petitioner failed to preserve the alleged errors at trial with a contemporaneous objection. Finally, Respondent argues that Petitioner waived his fourteenth, fifteenth, and sixteenth grounds for relief because Petitioner failed to fairly present the allegations contained in those grounds for relief to the Ohio Supreme Court as violations of federal law.[3]

Furthermore, Respondent urges the Court to dismiss the Fourth Amendment claim contained in Petitioner's tenth ground for relief and Petitioner's entire thirteenth ground for relief because those claims are not cognizable in federal habeas corpus proceedings. This Court will consider in this Opinion and Order only whether Petitioner defaulted any of his claims. The Court will address in subsequent orders all remaining claims and arguments. Accordingly, the Court **DENIES** Respondent's motion to dismiss as it relates to Petitioner's tenth and thirteenth grounds for relief.

As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. Claims appearing on the

---

[3]     In the motion to dismiss, Respondent argued that Petitioner procedurally defaulted his seventeenth ground for relief, but Respondent withdrew that argument in the reply. (Doc. # 22, at 1.)

face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175, 180, 226 N.E.2d 104, 108 (1967). Issues that must be raised in a postconviction action pursuant to Ohio Rev. Code § 2953.21 include claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *State v. Cole*, 2 Ohio St. 3d 112, 114, 443 N.E.2d 169, 171 (1982). In 1992, a third procedure of review emerged. A defendant must present his claims of ineffective assistance of appellate counsel to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (1992), and Ohio R. App. P. 26(B).

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999). Thus, a defendant must appeal the judgment of conviction to the Ohio Supreme Court on direct appeal, and he must appeal any adverse decision rendered by the trial court in postconviction to both the Ohio Court of Appeals and the Ohio Supreme Court. Likewise, a defendant must appeal any adverse decision rendered by the Ohio Court of Appeals on a motion for delayed reconsideration to the Supreme Court of Ohio.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims must present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to

dismissal, or stay and abey, for failure to exhaust state remedies.  *See Rhines v. Weber*, 544 U.S. 269, 276-77 (2005);  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam);  *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review unless he can demonstrate both cause for the procedural default and actual prejudice from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982);  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

A federal court must consider four factors when assessing whether a habeas petitioner procedurally defaulted his claims.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id*.  Second, the court must determine whether the state courts actually enforced the state procedural sanction.  *Id*.  Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *Id*. Finally, if the court determines that the petitioner did not comply with a state procedural rule, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *Id*.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985).  It is with these standards in mind that the Court will consider Respondent's motion.

A.    <u>Fourth Ground for Relief</u>:  Petitioner was denied the effective assistance of

counsel at the voir dire stage of his trial resulting in a denial of a fair and impartial jury as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

In his fourth ground for relief, Petitioner alleges several instances of ineffective assistance of counsel during the voir dire stage of his trial. Specifically, Petitioner argues that his counsel were ineffective for the following reasons: (1) counsel failed to challenge for cause three jurors who evidenced a predisposition in favor of the death penalty; (2) counsel failed to question all of the prospective jurors individually regarding their views of the death penalty and instead questioned only those jurors with reservations about recommending death; (3) counsel failed to question individually the prospective jurors regarding pre-trial publicity in the case, as well as their views concerning child abuse, pedophilia, and mental retardation; (4) counsel failed to object to the prosecutor's incorrect statements of law; and (5) counsel misstated the standard of proof and confused the aggravating circumstances and mitigating factors. (Doc. # 11, at ¶¶ 48-55.) Petitioner insists that counsel's deficient performance undermined confidence in the outcome of his capital trial, thereby violating his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. According to Petitioner, the state court decisions rejecting his claims of ineffective assistance of counsel during voir dire were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. (*Id*. at ¶ 55.)

Respondent asserts that Petitioner defaulted his fourth ground for relief by violating Ohio's doctrine of *res judicata*. (Doc. # 16, at 1.) According to Respondent, this is a claim appearing on the face of the record that Petitioner should have raised on direct appeal, but Petitioner presented it to the state courts for the first time during his postconviction proceedings

as his eighth ground for relief. Petitioner supported this claim with the affidavit of a criminal defense attorney who had reviewed his case. Respondent insists that the affidavit of an attorney expert does not constitute evidence *dehors* the record because "such an affidavit is essentially a notarized argument that could have been raised on direct appeal." (Doc. # 22, at 4.) According to Respondent, the state courts refused to consider the merits of this claim on the basis of *res judicata*, finding that it should have been raised on direct appeal.

Petitioner argues that he properly raised this claim of ineffective assistance of counsel during his state postconviction proceedings because his claim relied on evidence *dehors* the record. According to Petitioner, evidence in the form of an affidavit from an attorney expert was necessary to show what the proper standard of lawyering should have been during the voir dire stage of his trial. (Doc. # 20, at 4-5.) Petitioner maintains that "[a]llegations of ineffective assistance of counsel of this nature require additional evidence, outside the trial record, to otherwise explain behavior on the part of trial counsel that is not explained on the record." (*Id.* at 5-6.)

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule applies to Petitioner's claim and, if so, whether Petitioner violated that rule. As noted *supra*, claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d at 180, 226 N.E.2d at 108. Claims that involve matters outside the trial record must be raised and supported by evidence *dehors* the record in state postconviction proceedings. In order to properly raise a claim in postconviction, the evidence *dehors* the record "'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as

exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]'." *Stallings v. Bagley*, 561 F. Supp. 2d 821, 863 (N.D. Oh. 2008) (quoting *State v. Lawson*, 103 Ohio App. 3d 307, 659 N.E.2d 362 (Ohio App. 12 Dist. 1995)).

The voir dire conducted in Petitioner's case is part of the trial record. In his state court postconviction proceedings, the only evidence that Petitioner offered in support of this claim of trial counsel ineffectiveness during voir dire was the affidavit of an attorney-expert, Robert Dixon. (App. Vol. 6, at 2.) Attorney Dixon opined that based upon his knowledge of the standard of practice for lawyers in capital cases, Petitioner's trial counsel fell below that standard and failed to "engage in a meaningful voir dire which would have enabled them to detect death-prone jurors." (App. Vol. 6, at 10.) The Court finds that, at best, the Dixon affidavit amounts to a "notarized argument" whereby Dixon applied the facts as they appeared on the record to the applicable body of case law pertaining to claims of ineffective assistance of counsel. Such an undertaking, however, does not constitute new evidence or evidence *dehors* the record. *See, e.g., State v. Scudder*, 131 Ohio App. 3d 470, 477, 722 N.E.2d 1054, 1059 (Ohio App. 10th Dist. 1998) (affidavit does not constitute evidence *dehors* the record when affiant "bases his opinion on evidence that is in fact contained within the transcript of defendant's trial"); *Lawson*, 103 Ohio App. 3d at 315, 659 N.E.2d at 370 (finding affidavit of attorney expert to be "repackaged information already available in the record"); *State v. Bies*, No. C-980688, 1999 WL 445692, at *3 (Oh. App. 1st Dist. June 30, 1999) ("[T]he affidavit of the criminal defense attorney reviewing the case does not constitute legitimate new evidence because, as we have previously held, such an affidavit is essentially a notarized argument that could and should have [been] raised on direct appeal."); *State v. Hill*, No. C-961052, 1997 WL 727587, at *1 (Oh. App. 1st

Dist. Nov. 21, 1997) ("Attorney's affidavits explaining prevailing norms do not constitute evidence *dehors* the record and are akin to a notarized legal argument.").  Accordingly, the Court finds that the Dixon affidavit simply does not provide cogent evidence *dehors* the record sufficient to withstand the application of *res judicata*.  The allegations comprising Petitioner's fourth ground for relief squarely appear on the face of the record, and Petitioner should have raised this claim on direct appeal, as the Ohio Supreme Court could have fairly resolved the claim without resorting to evidence outside of the trial record.  Thus, Petitioner violated Ohio's doctrine of *res judicata* when he raised this claim in postconviction, and the Court finds that the first part of the *Maupin* test has been satisfied.

Under the second part of the *Maupin* test, the Court must determine whether the state courts clearly and expressly enforced the procedural default against Petitioner's claim.  In this instance, both the trial court and the intermediate appellate court clearly and expressly dismissed Petitioner's claim on the basis of *res judicata*.  (App. Vol. 7, at 367; App. Vol. 8, at 359.)  On July 30, 2003, the Ohio Supreme Court declined to accept jurisdiction over Petitioner's appeal, thereby letting stand the lower courts' rulings.  (App. Vol. 9, at 297.)  Therefore, the Court finds that the second part of the *Maupin* test is satisfied and Petitioner does not appear to argue otherwise.

With respect to the third part of the *Maupin* test, the Court finds that Ohio's doctrine of *res judicata* is an independent and adequate state procedural rule.  As noted earlier, to be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991).  To be "adequate," the state procedural rule must be firmly established and regularly followed by the

state courts. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)). Applying that standard, the Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata* is an adequate ground for denying federal habeas relief. *See, e.g.*, *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See, e.g.*, *Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169; *State v. Ishmail*, 67 Ohio St. 2d 16, 18, 423 N.E.2d 1068, 1070 (1981). Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law.

A petitioner in a postconviction proceeding must present sufficient documentary evidence outside the record to show entitlement to the relief requested or to an evidentiary hearing at which such evidence may be developed. *State v. Jackson*, 64 Ohio St. 2d 107, 111-12, 413 N.E.2d 819, 823 (1980). The rule in *Jackson* is an adequate and independent state ground for procedural default purposes. *See Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002) (noting that Ohio's procedural rule that claims advanced in postconviction must be supported by cogent documentation from outside the record has been "routinely and regularly applied in the

Ohio courts"); *see also Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (citing *Lorraine*); *Palmer v. Bagley*, No. 1:00-CV-882, 2005 WL 3965400, at *52 (S.D. Oh. Dec. 16, 2005). Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

In sum, the Court finds that there was a state procedural rule applicable to Petitioner that was routinely and regularly followed in Ohio when he petitioned for postconviction relief in the state courts. The state courts relied upon that rule in rejecting Petitioner's claim, and therefore, the claim is procedurally defaulted.

Once the Court determines that a constitutional claim is subject to procedural default and that the procedural rule is an adequate and independent state ground upon which to deny federal review, this Court will not review the merits of that claim unless Petitioner demonstrates cause and prejudice sufficient to excuse the default. The Supreme Court has refrained from establishing firm contours for the cause-and-prejudice standard that the Court adopted for excusing the default of constitutional claims during state court proceedings. *See Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988). As a general rule, however, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Frequently, the ineffective assistance of counsel is asserted as "cause." In the instant matter, Petitioner offers a "catch-all" cause argument with respect to all claims alleged by Respondent to be defaulted. According to Petitioner, "[a]ny cause for default is trial counsel's ineffectiveness that was raised in state court on direct appeal and/or postconviction litigation."

(Doc. # 20, at 21.)  The Court finds that Petitioner's catch-all cause argument cannot excuse the default of his fourth ground for relief because trial counsel ineffectiveness cannot logically serve as cause and prejudice to excuse the failure of appellate counsel to raise this claim on direct appeal.  Morever, Petitioner does not argue that the ineffective assistance of *appellate* counsel serves as cause and prejudice to excuse the default of any of his grounds for relief.  In fact, Petitioner never presented any claims of ineffective assistance of appellate counsel to the state courts.   Accordingly, in the absence of cause and prejudice to excuse the default, the Court hereby **GRANTS** Respondent's motion to dismiss Petitioner's fourth ground for relief.

   **B.**   <u>Fifth Ground for Relief</u>:  Petitioner's trial counsel rendered ineffective assistance by failing to present testimony from a mental health professional to support the motions to suppress.  Petitioner's rights to the effective assistance of counsel and due process as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution were violated.

   In his fifth ground for relief, Petitioner alleges that his trial counsel were ineffective because they failed to present testimony from a mental health professional to refute the state's contention that Petitioner knowingly, intelligently, and voluntarily waived his *Miranda* rights and  consented to a search of his residence and automobile.  (Doc. # 11, at ¶¶ 56-67.)  According to Petitioner, trial counsel filed a motion to suppress his statements, but counsel "failed to present any evidence that Petitioner was mentally retarded and that he did not understand what he was doing by waiving his *Miranda* rights."  (Doc. # 17, at ¶ 60.)  Petitioner contends that "[a] mental health professional should have been employed to testify about Petitioner's mental retardation and the effects of this limitation on his understanding of the *Miranda* waiver of rights form that he signed."  (*Id*.)  Petitioner further argues that trial counsel were ineffective because they failed to arrange for him to submit to the Grisso test, which would have reflected his

understanding of his constitutional rights.  (*Id*. at ¶ 65.)

Respondent argues that Petitioner procedurally defaulted his fifth ground for relief because Petitioner presented it to the state courts during his postconviction proceedings rather than on direct appeal.  Respondent apparently argues that the Ohio Supreme Court could have resolved the allegations comprising Petitioner's fifth ground for relief on direct appeal without resorting to evidence outside of the trial record.  Furthermore, Respondent contends that Petitioner has never presented his allegation involving the Grisso test to the state courts.  (Doc. # 16, at 5.)

Petitioner insists that he did not violate a state procedural rule by presenting this claim in postconviction as part of his ninth and tenth grounds for relief because the claim "involved the testimony of witnesses and records, all of which were *dehors* the record."  (Doc. # 20, at 9.) Specifically, Petitioner asserts that he supported his claim in postconviction with two affidavits from a psychologist, Dr. William Friday.  Petitioner maintains that the Dr. Friday's affidavits provided evidence *dehors* the record concerning Petitioner's learning disability, that his cognitive functioning falls within the lowest 2% of the population, and that Petitioner's "level of thinking and resulting behavior is clearly like a child."  (*Id*. at 7.)  With respect to Respondent's contention that he never presented his allegation concerning the Grisso test to the state court, Petitioner asserts that he presented that allegation as part of his tenth ground for relief during his postconviction proceedings.  Petitioner contends that he supported that claim with Dr. Friday's affidavit, which contained a recommendation that the Grisso test be administered to Petitioner "because there was a serious question regarding his ability to knowingly, intelligently and voluntarily waive his Miranda rights."  (*Id*.)

In his reply brief, Respondent contends that Petitioner could have been brought this claim on direct appeal without the affidavits of Dr. Friday because "[t]he record already included testimony from a clinical psychologist who had interviewed Petitioner and conducted both a psychiatric and an intelligence test."  (Doc. # 22, at 4.)  With respect to the Grisso test, Respondent argues that "the mentioning of a subject by a clinical psychologist in his affidavit is not sufficient to present a claim to state court."  (*Id*. at 9.)

The record reflects that Petitioner presented the allegations of ineffective assistance of counsel comprising his fifth ground for relief to the state courts during his state postconviction proceedings.  As part of his ninth ground for relief, Petitioner argued that his trial counsel "failed to present any evidence that Petitioner was mentally retarded and that he did not understand what he was doing by waiving his Miranda rights."  (App. Vol. 4, at 49.)  Petitioner alleged that due to his low mental functioning, "he did not understand that he did not have to sign the Miranda rights waiver form and the benefits of not signing the form."  (*Id*.)  In support of his claim, Petitioner submitted the affidavits of Dr. William Friday.  Dr. Friday's affidavits provided a detailed account of Petitioner's educational and psychological background, and Dr. Friday attempted to draw a nexus between that background and Petitioner's ability to knowingly, intelligently, and voluntarily waive his constitutional rights.

The state trial court determined that Petitioner's claim was barred by *res judicata* as it could have been raised on direct appeal.  Furthermore, the trial court concluded that even if the claim was not barred, it lacked merit because "low mental or cognitive ability, standing alone, is not a basis to exclude incriminating statements from evidence."  *State v. Lynch*, Case no. B-9804522 (Hamilton Cty. Common Pleas Ct., Feb. 21, 2001); (App. Vol. 7, at 367.)  Citing *State*

*v. Cole*, and without addressing the merits of Petitioner's claim, the court of appeals determined

that Petitioner's claim was barred by *res judicata* because the claim "could have been raised on

direct appeal without resort to the attached affidavit." *State v. Lynch*, No. C-010209, 2001 Ohio

App. LEXIS 5765, at *13 (1st Dist. Ct. App. Dec. 21, 2001); (App. Vol. 8, at 359-60.)

Under the first part of the *Maupin* test, the Court must determine whether Petitioner

violated a state procedural rule. As noted above, claims appearing on the face of the record must

be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *See*

*Perry*, 10 Ohio St. 2d at 180, 226 N.E.2d at 108. Similarly, a petitioner must raise in a

postconviction action pursuant to Ohio Rev. Code § 2953.21 claims that do not appear on the

face of the record. Respondent suggests that Petitioner could have raised this claim on direct

appeal and supported it with the testimony and report of Dr. Robert Tureen, a clinical

psychologist who evaluated Petitioner and testified during the mitigation hearing. Dr. Tureen

provided an overview of Petitioner's dysfunctional family, as well as his history of depression

and sexual abuse as a child, and explained the condition of pedophilia. Dr. Tureen prepared a

psychological profile of Petitioner and performed the Wechsler Intelligence Test. Dr. Tureen

testified that Petitioner's full-scale IQ is 72 and that approximately 97% of the population

functions higher than Petitioner. (Tr. Trans. Vol. 9, at 1634.) Dr. Tureen concluded that

Petitioner's intellectual functioning is borderline, meaning that "[i]t's not in the normal range or

the average range, and it's not in the mentally retarded range. It's literally borderline." (*Id.*)

Although Dr. Tureen did not review Petitioner's school or medical records, he noted that

Petitioner "was in special education around from the 6th grade on, and he did very poorly in

school." (*Id.* at 1635.) Dr. Tureen further testified that he gave Petitioner the Minnesota Multi-

Phasic Personality Inventory (MMPI-2), and that although the average person completes the test in about an hour to an hour and a half, it took Petitioner three hours of working constantly with Dr. Tureen to complete it, and there were a number of times that Dr. Tureen had to "either explain questions to him or define words for him." (Tr. Trans. at 1636.)

After reviewing the testimony of Dr. Tureen, as well as the complete trial record, the Court finds that Petitioner properly presented his fifth ground for relief in postconviction and supported it with evidence *dehors* the record. In this case, there was no evidence in the record from which counsel could have argued on direct appeal that the failure to call a psychologist to testify regarding his mental retardation adversely affected Petitioner. Although Dr. Tureen highlighted Petitioner's cognitive difficulties, he did not testify or render any opinion regarding Petitioner's ability to understand his *Miranda* rights or his ability to execute a waiver of his constitutional rights in light of those difficulties. Furthermore, Dr. Tureen testified at the mitigation hearing that although Petitioner's intellectual functioning was not in the "normal" range, Petitioner was not mentally retarded. (Tr. Trans. Vol. 9, at 1634.) This testimony could not have supported Petitioner's claim that counsel were ineffective for failing to call a psychologist to testify about how his mental retardation prevented him from executing a valid waiver of his constitutional rights. In fact, the trial record lacks any evidence suggesting that counsel would have elicited information favorable to Petitioner had a psychologist been called to testify. Under those circumstances, had the claim been raised on direct appeal, it likely would have failed on the prejudice prong of the *Strickland* standard governing claims of ineffective assistance of counsel because there was no evidence in the record that would support a finding of prejudice.

Dr. Friday's affidavit, however, attempted to draw a nexus between Petitioner's impaired cognitive functioning and his ability to knowingly, intelligently, and voluntarily waive his constitutional rights. Dr. Friday administered additional psychological testing not performed by the other doctors who evaluated Petitioner at the time of his trial. After using the Cognitive Assessment System, Dr. Friday concluded that Petitioner's cognitive functioning is "comparable to average 6-8 year old children." (App. Vol. 5, at 387.) Dr. Friday averred that Petitioner is learning disabled, that he processes information slowly, and that he "has poor reasoning ability especially to plan and predict the consequences of his decisions." (*Id*.) Dr. Friday opined that Petitioner is "very interested in seeking the approval of others if possible as he feels a significant lack of personal empowerment" and that "Mr. Lynch's performance on the tests administered by all three psychologists raise significant questions concerning Mr. Lynch's ability to voluntarily, intelligently, and knowingly waive his *Miranda* rights." (*Id*. at 387-88.) Dr. Friday averred that an expert in the area of mental retardation should have been made available to testify regarding the cognitive limitations suffered by functionally mentally retarded individuals. (*Id*. at 394.)

For the foregoing reasons, the Court is satisfied that Petitioner presented sufficiently cogent evidence outside the trial record to support raising this particular claim of trial counsel ineffectiveness during his state postconviction proceedings. Accordingly, the Court finds that *res judicata* does not bar Petitioner's claim.

Furthermore, the Court rejects Respondent's contention that Petitioner failed to present his claim concerning the Grisso test to the state courts. Petitioner presented his claim as part of his tenth ground for relief during his state postconviction proceedings. Specifically, Petitioner alleged that "[t]he Grisso test determines whether an individual actually understands what he is

doing by waiving his *Miranda* rights" and that "[d]efense counsel were ineffective for not having this test given to Petitioner to support their Motion to Suppress . . . ." (App. Vol. 4, at 52.) In support of this argument, Petitioner cited Dr. Friday's affidavit, as well as several federal cases, including *Colorado v. Connelly*, 479 U.S. 157 (1986), *Strickland v. Washington*, 466 U.S. 668 (1984), *Scheckloth v. Bustamonte*, 412 U.S. 218 (1973), and *Miranda v. Arizona*, 384 U.S. 436 (1966). Accordingly, the Court **DENIES** Respondent's motion to dismiss Petitioner's fifth ground for relief.

    **C.**    <u>Ninth Ground for Relief</u>:  The prosecutor used facts not in evidence to appeal to the passions and prejudices of the jury in violation of Petitioner's rights to due process and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

In his ninth ground for relief, Petitioner sets forth several instances of alleged prosecutorial misconduct during his capital trial.  Respondent contends that the allegations set forth in paragraphs 89 and 90 are procedurally defaulted because Petitioner failed to object to the alleged misconduct at trial.[4]  For the reasons that follow, the Court finds that Petitioner procedurally defaulted paragraph 89 of the petition, but paragraph 90 is properly before the Court for a consideration on the merits.

    **1. Paragraph 89**

In paragraph 89 of the petition, Petitioner argues that the prosecutor appealed to the passions and prejudices of the jury during the mitigation phase closing arguments.  (Doc. # 11, ¶ 89.)  Specifically, Petitioner challenges the following statement by the prosecutor:

And when you think of the aggravated murder, the purposeful killing of this child,

---

[4]    Initially, Respondent argued that Petitioner also defaulted ¶ 91, but Respondent withdrew that argument in the reply brief.  (Doc. # 22, at 5.)

the only caress she received was from him, for his pleasure, and the only grasp she received was not one of comfort, but as those big hands closed around her neck. And when Mary Love passed, unlike children that die of natural death, she wasn't thanking [*sic*] God to spare her life; she was probably begging him to take it. And that is the final aggravating circumstance. And when you put that on the other side of the ledger, ladies and gentlemen, that's what you weigh against what he presented to you these last couple days.

(Tr. Trans. at 1765.)

Petitioner presented this claim on direct appeal as part of his second and third

propositions of law. The Ohio Supreme Court determined that Petitioner "failed to object to this

argument and waived all but plain error." *State v. Lynch*, 98 Ohio St. 3d 514, 533-34, 787

N.E.2d 1185, 1208-09 (2003). In reviewing Petitioner's claim for plain error, the Ohio Supreme

Court determined that although the argument by the prosecutor was improper, that argument did

not affect the outcome of Petitioner's trial:

> The prosecutor erred in inviting the jury to consider what the victim experienced and was feeling in her last moments of life. As recognized in *State v. Wogenstahl* (1996), 75 Ohio St. 3d 344, 357, 662 N.E.2d 311, citing *State v. Combs* (1991), 62 Ohio St. 3d 278, 283, 581 N.E.2d 1071, such argument improperly "invites the jury to speculate on facts not in evidence."

> The prosecutor compounded the error by arguing that the jury could consider the victim's anguish as the "final aggravating circumstance." As stated in *State v. Wogenstahl* (1996), 75 Ohio St. 3d 344, 662 N.E.2d 311, paragraph two of the syllabus, "[i]t is improper for prosecutors in the penalty phase of a capital trial to make any comment before a jury that the nature and circumstances of the offense are 'aggravating circumstances.' "

> However, we find that the prosecutor's improper argument did not affect the outcome of the trial in view of the four statutory aggravating circumstances that Lynch was found guilty of committing and the lack of compelling mitigating evidence.

> Moreover, the trial court properly instructed the jury that the only aggravating circumstances in this case were the four aggravating circumstances that Lynch had been found guilty of committing. On this point the instructions were very clear, and we can assume that the jury followed the trial court's

instructions.

*Id*. at 533-34, 787 N.E.2d at 1208-09 (select citations omitted).

Petitioner offers conflicting arguments regarding whether he preserved this claim at trial. First, Petitioner appears to argue that the contemporaneous objection rule did not bar the allegation contained in paragraph 89 because trial counsel filed a pre-trial motion to preclude the state from appealing to the passions and prejudices of the jury. (Doc. # 20, at 10.) According to Petitioner, "the trial court effectively overruled this motion by allowing the prosecutor to state: 'And when Mary Love passed, unlike children that die of natural death, she wasn't thanking God to spare her life; she was probably begging him to take it.' " (*Id*.) Petitioner appears to argue that because his counsel filed that pre-trial motion, counsel did not have to actually object to the prosecutor's comments during the trial.

Petitioner goes on to argue, however, that his counsel provided constitutionally ineffective assistance by failing to object to this statement by the prosecutor. (*Id*. at 11.) Thus, Petitioner argues on one hand that his claim is not barred because the pre-trial motion preserved it for review and argues on the other hand that trial counsel's failure to object constitutes ineffective assistance of counsel and excuses the default of this claim.

With respect to Petitioner's first argument, Respondent insists that the filing of a pre-trial motion "does not replace that party's obligation to bring the alleged error to the trial court's attention contemporaneously with the alleged error." (Doc. #22, at 5.) Respondent notes that trial counsel chose to object during other parts of the trial that pertained to the same motion, demonstrating that "Petitioner was not relying on the trial court to apply that motion to each and every sentence made in the record." (*Id*. at 5.)

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule applies to Petitioner's claim, and, if so, whether Petitioner violated that rule. Under Ohio's contemporaneous objection rule, the failure to object to the admission of evidence at trial waives all but plain error on appeal. *State v. Davie*, 80 Ohio St. 3d 311, 319, 686 N.E.2d 245, 256 (1997) (failure to object to redacted videotape waived all but plain error); *State v. Loza*, 71 Ohio St. 3d 61, 75, 641 N.E.2d 1082, 1100 (1994) (failure to object to "other bad acts" evidence waived all but plain error). Plain error review, in turn, is to be exercised with "utmost caution," and invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St. 3d 12, 14, 444 N.E.2d 1332, 1334 (1983). An alleged error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St. 2d 91, 372 N.E.2d 804, paragraph two of the syllabus (1978). Under Ohio law, the denial of a motion *in limine* does not preserve a claimed error for review unless the party makes a contemporaneous objection at trial. *See State v. Hill*, 75 Ohio St. 3d 195, 203, 661 N.E.2d 1068, 1077 (1996) ("[T]he denial of a motion *in limine* does not preserve a claimed error for review in the absence of a contemporaneous objection at trial.") (citing *State v. Brown*, 38 Ohio St. 3d 305, 528 N.E.2d 523, paragraph three of the syllabus (1988)).

A review of the transcript reveals that Petitioner failed to object to the prosecutor's comments at trial regarding the suffering of Mary Love. Therefore, the Court concludes that under Ohio law, Petitioner's failure to make a contemporaneous objection waived the claim made in paragraph 89 of his ninth ground for relief.

Under the second part of the *Maupin* test, the violation of a state procedural rule will not

preclude habeas corpus review unless the state courts actually enforced the procedural rule. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). In order to determine whether the state courts clearly and expressly relied on a state procedural default, this Court must look to the last state court disposition providing reasons for its decision. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, it is apparent that the Ohio Supreme Court determined that Petitioner defaulted this claim by failing to object at trial and proceeded only to a limited review of the merits in order to determine whether plain error occurred. *Lynch*, 98 Ohio St. 3d at 533-34, 787 N.E.2d at 1209. Accordingly, the second part of the *Maupin* test is satisfied.

The Court further finds that Ohio's contemporaneous objection rule is an adequate and independent procedural rule under the third part of the *Maupin* test. Ohio's contemporaneous objection rule is clearly stated and regularly enforced; it serves important state interests in judicial economy and minimizing reversible error by enabling a trial judge to remedy errors at the earliest possible opportunity or to prevent them altogether. The Sixth Circuit has consistently held that Ohio's contemporaneous objection rule is an adequate and independent state procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell,* 209 F.3d 854, 866-71 (6th Cir. 2000); *see also Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Engle v. Isaac*, 456 U.S. 107, 124-25 (1982).

Once a federal court determines that a petitioner's claim is subject to procedural default and that the procedural rule is an adequate and independent state ground upon which to deny federal review, that court will not review the merits of the claim unless the petitioner demonstrates cause and prejudice sufficient to excuse the default. When a petitioner offers the

ineffective assistance of counsel as cause to excuse the default of a claim, a federal court's review of that cause argument is circumscribed in two important respects. First, a court may not review as cause any claim of ineffective assistance of counsel that was not properly presented to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts). Second, under amendments to the habeas corpus statute set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court cannot grant relief on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Petitioner offers the ineffective assistance of trial counsel as cause to excuse the apparent procedural default of paragraph 89 of his ninth ground for relief. (Doc. # 20, at 11, 21.) Petitioner asserts that he presented that precise claim of trial counsel ineffectiveness in his eighteenth ground for relief in his state postconviction petition and supported that claim with the affidavit of an attorney expert. Petitioner argues that he raised the claim in postconviction because "an expert opinion was required to conclude that trial counsel's failures to object during the state's closing arguments during the penalty phase of the trial constituted ineffective assistance of counsel." (*Id*. at 11.)

For the reasons set forth in the section of this Opinion and Order addressing Petitioner's

fourth ground for relief, the affidavit of the attorney expert did not constitute sufficiently cogent evidence outside the trial record to justify this claim being raised in postconviction. Trial counsel's failure to object to the allegedly improper argument by the prosecutor during closing arguments is a claim appearing squarely within the record, and Petitioner should have raised it on direct appeal. During the state postconviction proceedings, the state courts refused to consider the merits of this claim of ineffective assistance of counsel due to procedural default. Therefore, the Court concludes that Petitioner's claim of ineffective assistance of trial counsel for failing to object at trial is itself defaulted and cannot be used to excuse the default of paragraph 89 of Petitioner's ninth ground for relief. Accordingly, the Court **GRANTS** Respondent's motion to dismiss paragraph 89 of the petition.

### 2. Paragraph 90

In paragraph 90, Petitioner argues that during direct examination, the prosecutor improperly elicited a description of the victim's personality by asking her mother to describe what type of child the victim was. (Doc. # 11, at ¶ 90.) The record reflects that after having Carol Williams, the victim's mother, identify a picture of her daughter, the following exchange occurred between Mrs. Williams and the prosecutor:

Q.    Carol, this may be difficult, but I want to ask you a question. Could you describe for the jury, please, what kind of child Mary was?

A.    She was a –

Mr. Keller:    For the record, I'm going to object. I don't know that that's relevant to the case.

The Court:    All right. Overruled.

Q.    Thank you. You can answer.

A.  She was a very sweet little girl, very friendly, open heart to everybody, never hardly ever – I never really saw her upset about too many things. She was just sometimes too nice.

Q.  Was she a trusting little girl, would you say?

A.  Very.

Q.  She make friends easily?

A.  Yes.

Q.  Did she talk to strangers?

A.  I don't think Mary considered anybody a stranger.

(Tr. Trans. at 1027.)

Petitioner challenged this line of questioning on direct appeal to the Ohio Supreme Court as part of his second proposition of law.  In rejecting the claim, the Ohio Supreme Court ruled as follows:

> Williams's brief testimony about her daughter's friendly and trusting nature was highly relevant.  Such evidence showed that Lynch could have easily lured Love into his apartment.  Here, testimony about the victim's personality was not introduced to elicit the jury's sympathy.  Instead, it focused on events leading to Love's kidnap[p]ing, rape, and murder.  There was no prosecutorial misconduct in introducing such evidence.

*Lynch*, 98 Ohio St. 3d at 537-38, 787 N.E.2d at 1212 (citations omitted).

Respondent asserts that this claim is procedurally defaulted under Ohio's contemporaneous objection rule because trial counsel did not object to this testimony at trial. (Doc. # 16, at 6.)  Respondent is incorrect.  A review of the trial transcript reveals that trial counsel did object to this line of questioning and that the trial court overruled counsel's objection.  (Tr. Trans. at 1027.)  On direct appeal, the Ohio Supreme Court considered and rejected the merits of Petitioner's claim without reference to default or Ohio's contemporaneous

objection rule. Accordingly, the Court **DENIES** Respondent's motion to dismiss paragraph 90 of Petitioner's ninth ground for relief.

      **D.**    <u>Eleventh Ground for Relief</u>: Admission of evidence which had no bearing on Petitioner's guilt, and which was only offered to establish Petitioner's bad character denied Petitioner a fair trial and freedom from cruel and unusual punishment in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

Petitioner's eleventh ground for relief has two parts. First, Petitioner argues that the trial court erred by admitting into evidence a photograph of stuffed animals found at Petitioner's apartment. According to Petitioner, "[t]here was no testimony to suggest that these toys were used in any way in the commission of the charged offenses" and the photograph "lacked any probative value in determining guilt or innocence." (Doc. # 11, at ¶ 109.) Petitioner alleges that this evidentiary error is cognizable in federal habeas corpus because the trial court's error resulted in a denial of fundamental fairness. (*Id*. at ¶ 108.) In the second part of his eleventh ground for relief, Petitioner argues that prosecutorial misconduct deprived him of a fair trial. Petitioner contends that during the penalty phase closing arguments, the prosecutor improperly referred to the stuffed animals and argued that those items "proved that Petitioner was a pedophile." (*Id*. at ¶ 110.) According to Petitioner, the prosecutor urged the jury "to punish Petitioner for his status as a pedophile – something which he cannot change and did not choose." (*Id*.)

Respondent argues that the Court should dismiss the first part of Petitioner's eleventh ground for relief because it is based on state evidentiary law and "[f]ederal habeas corpus relief does not lie for errors of state law." (Doc. # 16, at 8.) However, this Opinion and Order addresses only whether any of Petitioner's claims are procedurally defaulted. The Court will

consider all claims not found to be defaulted in subsequent orders. Accordingly, the Court

**DENIES** Respondent's motion to dismiss the first part of Petitioner's eleventh ground for relief.

The second part of Petitioner's eleventh ground for relief is procedurally defaulted, Respondent argues, because Petitioner failed to object to the prosecutor's comments during the trial. According to Respondent, the Ohio Supreme Court actually enforced the contemporaneous objection rule and only conducted a plain-error review of Petitioner's claim. (Doc. # 16, at 9.)

Petitioner sets forth three reasons why he did not default his prosecutorial misconduct claim. First, Petitioner argues that the State "did not raise this defense in the State's Merit Brief to the Ohio Supreme Court and should not be allowed to assert it now." (Doc. # 20, at 14.) In addition, Petitioner argues that although the Ohio Supreme Court noted, *sua sponte*, that Petitioner failed to object to this issue at trial, the court went on to review the claim on the merits. (*Id.*) Petitioner maintains that "by addressing this Proposition on the merits, any default by Lynch has been forgiven." (*Id.*) Finally, Petitioner argues that the trial court overruled trial counsel's objection to the admission of the photograph of the stuffed animals and that "[i]t would have been futile for trial counsel to object to the prosecutor's mention of this exhibit during closing argument since the trial judge already admitted the exhibit over objection, meaning the exhibit was going to be submitted to the jury to review during deliberations anyway." (*Id.*)

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule is applicable to Petitioner's claim, and if so, whether Petitioner violated that rule. As stated in the previous section of this Opinion and Order, the failure to object at trial waives all but plain error on appeal under Ohio's contemporaneous objection rule. After reviewing the trial transcript, it is apparent to the Court that Petitioner failed to object to the prosecutor's

comments regarding the stuffed animals found in his apartment.  Petitioner does not appear to argue otherwise.  The Court rejects Petitioner's contention that it would have been futile for him to object to the closing argument in light of the fact that the trial court overruled his objection to having the actual photograph admitted into evidence.  The fact that Petitioner objected to the admission of the photograph did not relieve him of his duty to object to any improper argument concerning the photograph or the contents depicted therein.  The admission of a piece of evidence, and any subsequent comment by a prosecutor regarding that evidence are two separate legal issues.  Therefore, the Court concludes that Petitioner violated Ohio's contemporaneous objection rule.

Under the second part of the *Maupin* test, the violation of a state procedural rule will not preclude habeas corpus review unless the state courts actually enforced the procedural rule. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989).  Petitioner argues that the Ohio Supreme Court did not actually enforce the contemporaneous objection rule with respect to this claim.  According to Petitioner, "[i]n one line the Ohio Supreme Court sua sponte stated that Lynch did not object to this issue at trial and waived all but plain error review.  However, by addressing this Proposition on the merits, any default by Lynch has been forgiven."  (Doc. # 20, at 14.)  This Court disagrees.

Petitioner raised this claim of prosecutorial misconduct on direct appeal as part of his second proposition of law.  In addressing Petitioner's claim, the Ohio Supreme Court held:

> Lynch also argues that the prosecutor improperly referred to Lynch's stuffed animals during the state's penalty-phase closing argument. Here, Lynch objects to the prosecutor's comments that "toys and popcorn, those are the tools of the trade for the child molester, and that's why he has those and that's why he chose to have those items with him. It was his free choice; no addiction and no compulsion made him do that. He chose." *However, Lynch failed to object at*

46

*trial to the argument he now complains about and thus waived all but plain error.*

> The prosecutor's rebuttal comments responded to earlier defense arguments suggesting that Lynch's behavior as a pedophile was not a matter of choice. The defense counsel argued that Lynch "has had a lifetime of secrets, shameful urges and compulsions. Pedophiles are not generally killers. * * * What happened, his behavior was out of control. He was fulfilling a fantasy and things went out of control, and I think he's appalled by what he did also. He panicked." The defense also argued that "this is not something that anyone would wish for themselves. It's not so simple with this compulsion to simply turn on the faucet and turn it off. It does not work that way."

> Here, the prosecutor simply pointed out that Lynch made choices (i.e., living at an apartment complex populated with children and possessing children's toys) that led to Love's murder. Thus, the prosecutor's rebuttal argument represented fair comment and was not plain error.

*Lynch*, 98 Ohio St. 3d at 525-26, 787 N.E.2d at 1202 (emphasis added).

The Court finds the above statement of the Ohio Supreme Court to be an example of an express intention to reject a defaulted claim due to waiver and to provide only a limited review of the merits in order to determine whether plain error occurred. The Ohio Supreme Court stated unequivocally that "Lynch failed to object at trial to the argument he now complains about and thus has waived all but plain error." *Id* at 525, 787 N.E.2d at 1202. Therefore, the Court finds that the Ohio Supreme Court invoked and actually enforced the contemporaneous objection rule under the second part of the *Maupin* test.

Furthermore, the Court rejects Petitioner's argument that Respondent cannot argue default with respect to this ground for relief due to the State's failure to assert a violation of the contemporaneous objection rule on direct appeal. Petitioner has not cited a single case, and this Court is unaware of any such authority, holding that a warden-respondent is precluded from asserting as defaulted, in a habeas corpus proceeding, a claim that the state failed to allege as

waived on direct appeal. The issues before this Court are whether there is a state procedural rule that is applicable to Petitioner's claim and whether the state courts actually enforced that procedural rule against Petitioner. In this case, the Ohio Supreme Court enforced the contemporaneous objection rule against Petitioner.

The Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent procedural rule under the third part of the *Maupin* test and that federal habeas corpus review is precluded absent a demonstration of cause and prejudice. Petitioner has not attempted to establish the existence of cause and prejudice, with the exception of arguing at the end of his memorandum in opposition that "[a]ny cause for default is trial counsel's ineffectiveness that was raised in state court on direct appeal and/or postconviction litigation." (Doc. # 20, at 21.) The Court finds that Petitioner cannot prevail on this catch-all cause argument because Petitioner has never presented a claim of trial counsel ineffectiveness for failing to object to the prosecutor's closing argument to the state courts. It is well settled that this Court may not review as cause any claim of ineffective assistance of counsel that was not properly presented to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts).

For the foregoing reasons, the Court **GRANTS** Respondent's motion to dismiss the second part of Petitioner's eleventh ground for relief and hereby **DISMISSES** paragraphs 110 and 111 of the petition. Paragraphs 107 through 109 are properly before the Court for a decision on the merits.

    **E.**    <u>Fourteenth Ground for Relief</u>: The trial court erred by denying Petitioner's motions on instructional issues in the trial phase, violating Petitioner's rights to

due process and a fair trial as guaranteed by the Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution.

Petitioner's fourteenth ground for relief has two subparts. In subpart A, Petitioner argues that the trial court deprived him of due process and a fair trial by refusing to instruct the jury on the lesser included offenses of gross sexual imposition and involuntary manslaughter. (Doc. # 11, at ¶¶ 126-129.) In subpart B, Petitioner alleges that the trial court erred by refusing to merge the counts of rape and kidnapping into a single count and the corresponding capital specifications of rape and kidnapping into a single specification. Petitioner contends that the kidnapping and rape offenses constituted offenses of similar import with a single animus and that "the restraint of the victim in this case was merely incidental to the commission of the charged rape offense." (*Id*. at ¶131.)

Respondent argues that Petitioner failed to fairly present his federal constitutional challenges to the jury instructions to the state courts. (Doc. # 16, at 11-14.) According to Respondent, Petitioner raised the allegations contained in subparts A and B on direct appeal to the Ohio Supreme Court as his nineteenth and twenty-first propositions of law, but he based those claims entirely on state law and failed to include any assertion that the alleged errors violated federal law. (*Id*. at 11.) Respondent contends that "[a]lleged errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." (*Id*. at 11.) Because Petitioner did not present the federal due process component of his claims to the state courts, Respondent argues, this Court may not consider Petitioner's federal constitutional claims on habeas review.

In response, Petitioner argues that "[a]lthough Lynch did not state his grounds for relief in his 19th and 21st Propositions of law in his direct appeal specifically in terms of federal law, it

is clear that the issues raised affect the basic due process rights to be convicted of what one is actually guilty of." (Doc. # 20, at 16.) Without further argument, Petitioner concludes that the Court should consider his fourteenth ground for relief on the merits. (*Id.*)

It is well settled that a habeas petitioner must fairly present the substance of his federal constitutional claims to the state courts in order to give the state courts a full and fair opportunity to adjudicate such claims. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "Because state courts, like federal courts, are required to enforce federal law, including rights asserted under the Constitution, comity requires that the state courts should have the first opportunity to review the prisoner's federal claim and provide any necessary relief." *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)). If a petitioner fails to fairly present the federal claim and the opportunity to raise that federal claim in state court has lapsed, that petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the claim on the merits.

To fairly present a federal claim, a petitioner must plead both a factual and legal basis for the claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). In *Baldwin v. Reese*, 541 U.S. 27 (2004), the United States Supreme Court held that the requirement of fair presentment does not require extensive elaboration:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Id*. at 32. However, a habeas petitioner does not fairly present his claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional

claim appears self evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983).  In *Dye v. Hofbauer*, 546 U.S. 1 (2005), the Supreme Court determined that a petitioner fairly presented his federal claims when he argued in a state court brief that he was denied due process of law and a fair trial, linked his argument to constitutional amendments, and cited federal cases.  *Id.* at 3-4.

In *McMeans v. Brigano*, the Sixth Circuit set forth several considerations relevant to determining whether a habeas petitioner fairly presented his federal constitutional claims to the state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

228 F.3d at 681.  Although a petitioner "need not cite chapter and verse of constitutional law," he must do more than merely allege a violation of his rights to a "fair trial" and "due process." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006).  Applying that standard to this case, the Court finds that Petitioner fairly presented the federal constitutional allegations contained in subpart A of his fourteenth ground for relief to the state courts, but that Petitioner failed to do so with respect to the allegations set forth in subpart B.

> (A)   Denial of requested instructions on lesser included offenses was reversible error when the evidence would have supported acquittal on the charges in the indictment but conviction of the lesser charge.

The record reflects that Petitioner argued on direct appeal, as part of his nineteenth proposition of law, that the trial court erred by failing to instruct the jury on the lesser included offenses of voluntary manslaughter and gross sexual imposition.  In his brief to the Ohio Supreme Court, Petitioner did not mention or cite any federal law and he did not identify any

relevant federal constitutional amendments or cases. In support of his claim, Petitioner cited *State v. Kidder*, 32 Ohio St. 3d 279, 513 N.E.2d 311 (1987), *State v. Johnson*, 36 Ohio St. 3d 224, 522 N.E.2d 1082 (1988), and *State v. Thomas*, 40 Ohio St. 3d 213, 533 N.E.2d 286 (1988), and argued that there was a "reasonable factual dispute" sufficient to justify an instruction on the lesser included offenses. (App. Vol. 3, at 101-103.)

In *State v. Kidder*, 32 Ohio St. 3d 279, 513 N.E.2d 311, the Ohio Supreme Court clarified and set forth a two-part test for determining whether an instruction on a lesser included offense is warranted. In fashioning that test, the Ohio Supreme Court began its analysis by citing *Beck v. Alabama*, 447 U.S. 625 (1980). In *Beck*, the United States Supreme Court concluded that the failure to give an instruction on a lesser included offense in a capital case violates due process if the evidence presented warranted such an instruction. Pursuant to *Beck*, an accused is entitled to an instruction on a lesser included offense where the evidence presented, if believed, could have reasonably led to a verdict of guilty on the lesser offense. The Court in *Beck* noted the risk, if no such instruction is given, that a jury will convict a defendant on a more serious offense despite the existence of a reasonable doubt as to one element, fearing that the defendant would otherwise remain unpunished. 447 U.S. at 634-35. Citing *Beck*, the Ohio Supreme Court concluded in *Kidder* that "the trial court's task is two fold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." *Kidder*, 32 Ohio St. 3d at 314.

The Court finds that the inclusion of a state law case employing a federal constitutional standard satisfies the requirement of fair presentment. Petitioner's state court brief relied on a

state case that employed a federal constitutional analysis, and the inclusion of *State v. Kidder* in his brief to the Ohio Supreme Court was sufficient to present his federal *Beck* claim to the state court. The right to an instruction on a lesser included offense where the evidence warrants such an instruction is virtually identical under state and federal law. Accordingly, the Court **DENIES** Respondent's motion to dismiss subpart A of Petitioner's fourteenth ground for relief.

>  (B)     Denial of requested merger of the rape and kidnapping charges and specifications was erroneous when any restraint of the victim's liberty was merely incidental to the rape offense, and there was no separate animus for the restraint.

In subpart B, Petitioner argues that the trial court deprived him of due process and a fair trial because the court failed to merge the separate counts of kidnapping and rape into a single offense and failed to merge the corresponding capital specifications into a single specification. (Doc. # 11, at ¶131.) Respondent contends that Petitioner waived this subpart because Petitioner failed to fairly present it to the state courts. (Doc. # 16, at 13.) Specifically, Respondent argues that Petitioner's twenty-first proposition of law on direct appeal did not assert a due process violation and that "Petitioner's entire argument in state court was based on state law and did not include any assertion that the alleged error violated Federal law." (*Id.*)

In his twenty-first proposition of law on direct appeal to the Ohio Supreme Court, Petitioner argued that the trial court erred by failing to merge the counts of kidnapping and rape and the corresponding specifications. The heading to his twenty-first proposition of law read as follows:

>  Proposition of Law # 21: Denial of requested merger of the rape and kidnap[p]ing charges and specifications was erroneous when any restraint of the victim's liberty was merely incidental to the rape offense, and there was no separate animus for the restraint.

(App. Vol. 3, at 104.)  In his brief, Petitioner did not argue that the trial court deprived him of a fair trial or due process, as he does in the instant habeas action.  Furthermore, Petitioner did not cite or identify any applicable federal law or constitutional amendments.  Instead, Petitioner cited two state cases, *State v. Logan*, 60 Ohio St. 2d 126, 397 N.E.2d 1345 (1979), and *State v. Donald*, 57 Ohio St. 2d 73, 386 N.E.2d 1341 (1979), both of which analyzed Ohio Rev. Code § 2941.25, which is known as Ohio's "multiple count statute."  Neither of those state cases cite, reference, or analyze federal law.

After considering Petitioner's twenty-first proposition of law on direct appeal, the Court cannot conclude that Petitioner presented a federal constitutional claim to the state court concerning the trial court's failure to merge the counts and specifications of rape and kidnapping.  Petitioner did not cite or identify federal law in his state court brief, he did not rely upon a single federal case or a state case employing federal constitutional analysis to support his claim, he did not phrase his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right, and he did not allege facts considered well within the mainstream of constitutional law.  Furthermore, Petitioner failed to mention the terms "due process" or "fair trial" in either the heading for his twenty-first proposition of law or in his brief to the Ohio Supreme Court.  In rejecting the merits of Petitioner's claim, the Ohio Supreme Court analyzed Petitioner's claim under state law and did not reference or cite federal law in its decision, no doubt due to Petitioner's failure to alert the court that his claim might possess a federal constitutional dimension.

Without even minimal reference to federal law by Petitioner or the Ohio Supreme Court, this Court cannot conclude that Petitioner fairly presented his federal constitutional claim to the

state court. Because Petitioner has not attempted to demonstrate cause and prejudice sufficient

to excuse his failure to fairly present this claim, the Court **GRANTS** Respondent's motion to

dismiss subpart B of Petitioner's fourteenth ground for relief.

      **F.**    <u>Fifteenth Ground for Relief</u>: Although multiple charges of aggravated murder may be submitted to the jury during the guilt phase of trial, where there is only one death charge there can be only one conviction, and presentation to the jury of multiple counts, with multiple specifications, violates petitioner's right to due process and to be free from cruel and unusual punishment guaranteed by the Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

In his fifteenth ground for relief, Petitioner argues that the trial court erred by failing to

merge the multiple counts of aggravated murder. The record reflects that the grand jury indicted

Petitioner on three counts of aggravated murder in connection with the death of Mary Love.

Count two of the Indictment charged Petitioner with aggravated murder while committing rape,

count four charged Petitioner with aggravated murder while committing kidnapping, and count

five charged Petitioner with aggravated murder by purposely causing the death of a child under

thirteen. Petitioner argues that although it was proper to submit all three counts to the jury for

consideration during the trial phase of his trial, the trial court erred by submitting all three counts

to the jury during the penalty phase. According to Petitioner, "[t]he submission to the jury of

three counts of aggravated murder, where only one conviction could lawfully be entered,

taint[ed] the jury's consideration of a sentencing recommendation." (Doc. # 11, ¶ 137.)

Moreover, where four identical specifications accompanied each of the counts of aggravated

murder, Petitioner argues, a jury "could easily be overwhelmed by the sheer appearance of a

great volume of aggravation to be weighed against the mitigation which could only be presented

to it once." (*Id.*) Petitioner insists that the trial court's failure to merge the aggravated murder

counts during the penalty phase of his trial denied him a fair trial and due process of law as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id*. at ¶ 138.)

Respondent contends that Petitioner defaulted his fifteenth ground for relief because Petitioner failed to fairly present it to the state courts as a federal claim. (Doc. # 16, at 14.) According to Respondent, Petitioner presented the allegations underlying his fifteenth ground for relief to the Ohio Supreme Court on direct appeal as his tenth proposition of law, but Petitioner argued only that the trial court violated state law. (*Id*.) Respondent argues that although the heading to Petitioner's tenth proposition of law in state court included "a cursory mention of constitutional amendments," Petitioner did not fairly present the claim as a violation of federal law because "Petitioner's substantive argument was based on Ohio law." (*Id*. at 15.)

Petitioner argues that he satisfied the doctrine of fair presentment by alleging in the heading to his tenth proposition of law that the trial court's error deprived him of "due process" and the right to be "free from cruel and unusual punishment under the state and federal constitutions." (Doc. # 20, at 17.) This Court cannot agree.

The Sixth Circuit has determined that a habeas petitioner must do more than allege a general violation of the right to due process and a fair trial, and must include more than a "bare and isolated citation to the Fourteenth and Sixth Amendments," in order to fairly present a federal constitutional claim to the state courts. In *Slaughter v. Parker*, 450 F.3d 224 (2006), the petitioner argued on habeas review that the trial court deprived him of a fair trial by permitting a juror to question him. In his brief to the Supreme Court of Kentucky on direct appeal, Slaughter reproduced the juror's question and argued that "[b]ased on this denial of due process and a fair

trial by an impartial jury, appellant is entitled to a new trial." *Id.* In support of that position,

Slaughter cited the Fourteenth and Sixth Amendments. The Sixth Circuit held that Slaughter

failed to fairly present his federal claim to the state court:

> This case is distinguishable from *Dye v. Hofbauer*, in which the Supreme
> Court reversed our holding that a habeas petitioner had not adequately presented
> his federal claim to the state court. In *Dye*, the Court noted that the petitioner's
> state court brief not only alleged a violation of due process but also explicitly
> referenced four federal cases, all of which addressed due process violations.
> Slaughter's case is clearly distinguishable. Unlike the brief at issue in *Dye*, the
> only reference to federal law in Slaughter's state court brief on this issue is the
> bare and isolated citation to the Fourteenth and Sixth Amendments. Accordingly,
> we conclude that Slaughter has not fairly presented his claim, which is essentially
> a "general allegation[] of the denial of a right to a 'fair trial.' "

*Slaughter*, 450 F.3d at 236 (internal citations omitted). *See also Blackmon v. Booker*, 394 F.3d

399, 401 (6th Cir. 2004) (claim not fairly presented where petitioner's only citation to federal

authority appeared in the heading and petitioner "failed to develop any cogent arguments

regarding those rights beyond the naked assertion that they were violated"); *Katt v. Lafler*, 271

F. App'x 479, 482 (6th Cir. 2008) (claim not fairly presented where petitioner made an "isolated

allusion to constitutional rights to due process and a fair trial" with a citation to the Fifth, Sixth

and Fourteenth Amendments).

The heading to Petitioner's tenth proposition of law on direct appeal characterized

Petitioner's claim as follows:

> Proposition of Law # 10: Although multiple charges of aggravated murder may
> be submitted to the jury during the guilt phase of the trial, where there is only one
> death charge there can be only one conviction, and presentation to the jury of
> multiple counts, with multiple specifications, violated defendant's right to due
> process and to be free from cruel and unusual punishment under the state and
> federal constitutions.

(App. Vol. 3, at 75.) Petitioner's brief on direct appeal failed to cite any federal authority in

support of his claim. Instead, Petitioner's brief referenced only state law, and Petitioner argued that "[m]ultiple convictions and sentences are forbidden by Ohio's statutory codification of the common-law rule against 'shotgun' convictions." (*Id*. at 76.) Petitioner neither referenced any specific federal constitutional amendments in his heading or brief nor attempted to establish that the state law requirements at issue stemmed from or were compelled by federal constitutional principles.

In resolving Petitioner's tenth proposition of law, the Ohio Supreme Court recognized that under Ohio law, multiple counts of aggravated murder involving the same victim should be merged for sentencing. The court determined that the trial court's failure to merge the three counts prior to submitting Petitioner's case to the jury for sentencing deliberations "represent[ed] a procedural error that is harmless beyond a reasonable doubt." *Lynch*, 98 Ohio St. 3d at 535, 787 N.E.2d at 1210. In reaching that decision, the Ohio Supreme Court noted that the trial court had merged the three counts prior to imposing the sentence of death. *Id*.

After considering Petitioner's tenth proposition of law on direct appeal, the Court cannot conclude that Petitioner fairly presented to the Ohio Supreme Court the federal constitutional claim contained within his fifteenth ground for relief. As set forth by the Sixth Circuit, a habeas petitioner must allege more than a violation of "due process" and a "fair trial" in order to fairly present a federal claim to a state court. Petitioner fell short in that regard. Petitioner offered no federal cases to support his claim on direct appeal, and the only reference to federal law in Petitioner's state court brief was the isolated reference to "due process" and "cruel and unusual punishment" in the heading to his tenth proposition of law. In denying Petitioner's claim, the Ohio Supreme Court relied exclusively on state law, made no reference to federal law, and did

not treat Petitioner's claim as one brought under federal law.  Accordingly, the Court must

conclude that Petitioner failed to fairly present his fifteenth ground for relief to the state court.

Petitioner does not offer cause and prejudice to excuse that default.  Therefore, the Court

**GRANTS** Respondent's motion and hereby **DISMISSES** Petitioner's fifteenth ground for relief.

> **G.** <u>Sixteenth Ground for Relief</u>: Although multiple specifications may be submitted
> to the jury during the first phase of trial, duplicative specifications must be
> merged before they are weighed against the aggravating circumstances, and
> presentation to the jury of multiple, duplicative specifications, violates
> petitioner's rights to due process and to be free from cruel and unusual
> punishment as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth
> Amendments to the United States Constitution.

In his sixteenth ground for relief, Petitioner argues that the trial court erred by failing to

merge duplicative capital specifications.  The record reflects that Petitioner was convicted of

three counts of aggravated murder involving the same victim and that each of those three counts

contained four identical death-penalty specifications: murder for the purpose of escaping

detection or apprehension for the offense of rape, Ohio Rev. Code § 2929.04(A)(3); principal

offender in a murder while committing or attempting to commit rape, Ohio Rev. Code §

2929.04(A)(7); principal offender in a murder while committing or attempting to commit

kidnapping, Ohio Rev. Code § 2929.04(A)(7); and principal offender in a murder of a child

under 13 years of age, Ohio Rev. Code § 2929.04(A)(9).  According to Petitioner, "[t]he

specification of killing to escape detection for a felony and one for killing in the course of the

same felony are duplicative and should have been merged."  (Doc. # 11, at ¶ 142.)  Petitioner

contends that the trial court's failure to merge the multiple specifications resulted in a denial of

his rights to a fair trial and due process of law as guaranteed by the Fifth, Sixth, Ninth, and

Fourteenth Amendments to the United States Constitution.

Respondent argues that Petitioner defaulted his sixteenth ground for relief because Petitioner failed to fairly present it to the state courts as a federal constitutional claim. (Doc. # 16, at 16.) Respondent acknowledges that Petitioner presented the underlying allegations of his sixteenth ground for relief to the Ohio Supreme Court as his eleventh proposition of law, but argues that Petitioner based his claim exclusively on state law and did not assert a violation of any federal right. Alternatively, Respondent argues that Petitioner's sixteenth ground for relief is procedurally defaulted because Petitioner failed to request merger of the specifications at trial and the Ohio Supreme Court actually enforced the violation of a state procedural rule by finding the claim waived. (Doc. # 16, at 16-17.)

Petitioner contends that he fairly presented his sixteenth ground for relief to the Ohio Supreme Court by alleging in the heading to his eleventh proposition of law that the trial court's failure to merge the capital specifications violated his right to "due process and to be free from cruel and unusual punishment under the state and federal constitutions." (Doc. # 20, at 18.) Furthermore, Petitioner argues that this claim is not procedurally defaulted because the Ohio Supreme Court conducted a merits review of this claim even though his trial counsel failed to request merger of the specifications at trial.

The heading to Petitioner's eleventh proposition of law on direct appeal characterized his claim as follows:

> Proposition of Law # 11: Although multiple specifications may be submitted to the jury during the first phase of trial, duplicative specifications must be merged before they are weighed against the aggravating circumstances, and presentation to the jury of multiple, duplicative specifications, violates defendant's right to due process and to be free from cruel and unusual punishment under the state and federal constitutions.

(App. Vol. 3, at 78.) Petitioner argued that the trial court erred by failing to merge the

specification of murder to escape detection or apprehension for the offense of rape, and the specification of murder in the course of that same rape, because the specifications arose from the same acts and were committed with the same animus.  (*Id*. at 79.)  Petitioner did not cite any source of federal law in his brief to the Ohio Supreme Court with respect to this proposition of law.  Instead, Petitioner cited state cases construing the Ohio death penalty statutes, and the state cases relied upon by Petitioner did not address or apply any source of federal law.

In rejecting Petitioner's eleventh proposition of law, the Ohio Supreme Court determined that Petitioner failed to request merger of the specifications at trial and had therefore waived all but plain-error review.  *State v. Lynch*, 98 Ohio St. 3d 514, 536, 787 N.E.2d 1185, 1211 (2003).  The court acknowledged that trial counsel had requested merger of the kidnapping and rape specifications, but determined that counsel had failed to request merger of the rape specification with the specification of murder in order to escape detection or apprehension for the offense of rape.  The Ohio Supreme Court held that "the defense failed to request merger of the specifications and thus waived all but plain error review."  *Id*.  The court concluded that no error occurred:

> Lynch lured Love into his apartment, and after they watched TV and ate popcorn, he removed Love's clothing and orally raped her.  When Love started screaming, Lynch strangled her to keep her quiet.  The facts establish that kidnap[p]ing and rape were crimes distinct from murder to escape detection.  Therefore, merger of the R.C. 2929.04(A)(3) and (A)(7) specifications was unnecessary.  *State v. Wogenstahl*, 75 Ohio St. 3d 344, 367, 662 N.E.2d 311.

*Id*. at 536-37, 787 N.E.2d at 1211.

As with Petitioner's fifteenth ground for relief, the Court cannot conclude that Petitioner fairly presented to the Ohio Supreme Court the federal constitutional claim contained within his sixteenth ground for relief.  Petitioner offered no federal cases to support his claim on direct

appeal, and the only reference to federal law in Petitioner's state court brief was the isolated reference to "due process" and "cruel and unusual punishment" in the heading to his eleventh proposition of law. In reviewing Petitioner's claim for plain error, the Ohio Supreme Court relied exclusively on state law, made no reference to federal law, and did not treat Petitioner's claim as one brought under federal law. Accordingly, the Court must conclude that Petitioner failed to fairly present his sixteenth ground for relief to the state court. Petitioner does not offer cause and prejudice to excuse that default.

Furthermore, even if Petitioner had fairly presented his federal claim to the Ohio Supreme Court, Petitioner's sixteenth ground for relief would be procedurally defaulted because Petitioner did not request the merger at trial. As noted by the Ohio Supreme Court, trial counsel requested merger of the specifications of murder in the course of a rape and murder in the course of a kidnapping, but counsel failed to request the merger of either or both of those specifications with the specification of murder in order to escape detection or apprehension under Ohio Rev. Code § 2929.04(3). It is the trial court's failure to merge the rape and/or kidnapping specifications with the Ohio Rev. Code § 2929.04(A)(3) specification that is the subject of this ground for relief. Because the Ohio Supreme Court determined that this claim was waived due to counsel's failure to request the merger at trial, it would not properly be before this Court for review even if Petitioner had fairly presented it in the first instance.

Although Petitioner has alleged that trial counsel ineffectiveness serves as cause and prejudice to excuse the default of any of his grounds for relief, Petitioner cannot rely on such alleged ineffectiveness to excuse the default of his sixteenth ground for relief. Petitioner has never presented a claim to the state courts alleging that trial counsel were ineffective for failing

62

to request merger of the specifications. As such, he cannot rely on a claim that is itself defaulted to excuse the default of his sixteenth ground for relief. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

Therefore, the Court **GRANTS** Respondent's motion and hereby **DISMISSES** Petitioner's sixteenth ground for relief.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Respondent's motion to dismiss with respect to Petitioner's fourth ground for relief, paragraph 89 of his ninth ground for relief, paragraphs 110-111 of his eleventh ground for relief, subpart B of his fourteenth ground for relief, and his entire fifteenth and sixteenth grounds for relief. The Court **DENIES** Respondent's motion to dismiss with respect to Petitioner's fifth ground for relief, paragraph 90 of Petitioner's ninth ground for relief, and subpart A of Petitioner's fourteenth ground for relief. The Court **DENIES** Respondent's motion to dismiss as it relates to Petitioner's tenth and thirteenth grounds for relief, and paragraphs 107-109 of Petitioner's eleventh ground for relief because Respondent's arguments are outside of the scope of this Opinion and Order.

Pursuant to the Court's First Scheduling Order, Petitioner shall file any motions for discovery and/or expert or investigative services within thirty days of the date of this Opinion and Order. Respondent shall have thirty days from the date that any such motions are filed to file a memorandum in opposition. Petitioner shall file a reply within thirty days from the date that Respondent files any memorandum in opposition.

**IT IS SO ORDERED.**

  /s/ Gregory L. Frost
GREGORY L. FROST

UNITED STATES DISTRICT JUDGE