IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RALPH LYNCH,

  Petitioner,

v.

STUART HUDSON, Warden,

  Respondent.

Case No. 2:07-cv-948
JUDGE FROST
Magistrate Judge Abel

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action under 28 U.S.C. § 2254. This matter is before the Court upon Petitioner's motion for funds for expert services (Doc. # 27), Respondent's memorandum in opposition (Doc. # 28), and Petitioner's reply (Doc. # 30).

### I. Introduction

Petitioner seeks funds to retain a neuropsychologist and a clinical psychologist. Pursuant to 18 U.S.C. § 3599(f), this Court may authorize Petitioner's counsel to obtain investigative or expert services on behalf of Petitioner if the Court determines that the services are reasonably necessary for the representation of the defendant.[1] Few cases exist defining what "reasonably necessary" means within the context of this statute. "However, on the whole, the rulings appear very case-specific and the analyses fact-intensive." *Bradford v. Johnson*, 162 F. Supp. 2d 578, 580 (N.D. Tex. 2001). Where a petitioner's request is based on "mere suspicion and surmise," it is within a district court's discretion to deny a request for funds and find that the petitioner failed to demonstrate that funds are

---

[1] Pursuant to the "USA PATRIOT Improvement and Reauthorization Act," the provisions of 21 U.S.C. § 848(q)(9) were replaced with identical provisions now set forth in 18 U.S.C. § 3599(f).

"reasonably necessary." *Patrick v. Johnson*, 48 F. Supp. 2d 645, 647 (N.D. Tex. 1999); *see also Bell v. True*, 366 F. Supp. 2d 403, 408 (W.D. Va. 2005) (denying request for funds where services would be duplicative and amount to a fishing expedition); *Delong v. Thompson*, 790 F. Supp. 594, 616-17 (E.D. Va. 1991) (denying request for funds where proposed investigation constituted a "fishing expedition"). For example, in *Alley v. Bell*, 307 F.3d 380, 399 n.7 (6th Cir. 2002), the Court of Appeals for the Sixth Circuit affirmed the denial of a motion for funds for brain and genetic tests aimed at gathering additional evidence of a mental impairment, because the petitioner failed to demonstrate how the tests were relevant to the only inquiry before the district court–namely, whether the state courts reasonably applied federal law in holding that trial counsel provided effective assistance. On the other hand, a district court should grant a request for funds as reasonably necessary when "a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Foust v. Houk*, No. 1:06cv2625, 2008 WL 162786, at *4 (N.D. Ohio Jan. 15, 2008). For the reasons that follow, the Court finds that expert services are reasonably necessary as to one but not both of Petitioner's requests.

### A. Motion For Funds To Employ A Neuropsychologist

Petitioner seeks funds to employ Dr. Michael Gelbort, a neuropsychologist, to perform neuropsychological testing. Petitioner asserts that he needs the services of a neuropsychologist in connection with his fifth, sixth, and seventh grounds for relief, wherein he alleges that his trial counsel provided ineffective assistance by failing to present testimony from a mental health professional to support the motions to suppress, failing to present testimony from a mental health expert to support Petitioner being convicted of a lesser offense, and failing to investigate, prepare,

and present valuable testimony and records to support a sentence less than death during the mitigation phase of his trial.

The record reflects that during the mitigation hearing, Petitioner presented testimony from Dr. Robert Tureen, a clinical psychologist. (Tr. Tran. Vol. 9, at 1621-1660.) After conducting a psychological evaluation of Petitioner, Dr. Tureen concluded that Petitioner fell within the borderline range of intellectual functioning, with an IQ of 72. (App. Vol. 17, Ex. 44.) In preparation for Petitioner's postconviction proceedings, Dr. William Friday, a clinical psychologist, evaluated Petitioner and reviewed the psychological testing, data analysis, and the testimony of the previous experts who had evaluated Petitioner, including Dr. Tureen. (App. Vol. 5, at 379-394.) Dr. Friday prepared an affidavit, attesting to errors and deficiencies with respect to Dr. Tureen's evaluation of Petitioner, as well as Dr. Tureen's interpretations of testing. (*Id.* at 383, ¶¶ 11-16.) Dr. Friday characterized Petitioner's cognitive functioning as significantly below average, determined that Petitioner is learning disabled, and opined that Petitioner suffers from significant neuropsychological deficits. (*Id.* at 387, ¶ 4.) Dr. Friday recommended that a complete neurological battery be administered in order to "more specifically evaluate the neuropsychological functioning of Mr. Lynch with reference to his frontal lobe/planning and behavioral consequences predicting deficit." (*Id.* at ¶ 5.) Furthermore, Dr. Friday recommended that Petitioner undergo a Single Positron Emission Computed Tomography (SPECT) scan, which could corroborate the deficiencies in Petitioner's brain functioning. (*Id.*) Finally, Dr. Friday opined that "an expert in the area of mental retardation should have been made available to the jury to assist them in understanding how Mr. Lynch's cognitive deficits resulted in the crime." (*Id.* ¶ 6.)

In his motion for funds, Petitioner cites literature suggesting that "pedophilic men ha[ve]

significantly lower white matter volumes than non-pedophilic men," and suffer additional symptoms of poor brain function due to the low white matter present in their brain. (Doc. # 27, at 4.) Petitioner asserts that neuropsychological testing is necessary, because "[i]ndications exist in the literature that pedophiles, such as Petitioner, may suffer from brain damage or irregularities that can cause the deviant behavior, supporting the argument that Petitioner did not chose to be a pedophile." (*Id.*) Petitioner requests that the Court authorize funds for the services of Dr. Michael Gelbort. According to Petitioner, Dr. Gelbort would determine whether a SPECT scan, MRI testing, or a Positron Emission Tomography (PET) scan should be performed. (*Id.*) Petitioner maintains that he requested funds for the services of Dr. Gelbort during his postconviction proceedings, but the trial court denied his request. (App. Vol. 7, at 23, 28.) Petitioner argues that Dr. Gelbort would be able to administer complete neuropsychological testing and relate the results of that testing to the crime in this case. (*Id.*)

Respondent opposes Petitioner's request for funds to employ a neuropsychologist. Respondent argues that Petitioner's motion for funds fails to establish any correlation between the assistance he seeks and his fifth, sixth, and seventh grounds for relief, all of which allege the ineffective assistance of trial counsel. According to Respondent, "the grounds for relief are altogether unrelated to Petitioner's desire to prove that he allegedly did not chose to be a pedophile." (Doc. # 28, at 8.)

In his reply, Petitioner asserts that his funding request is related to his claims of ineffective assistance of counsel. According to Petitioner, "[o]nce counsel knew from Dr. Tureen that Petitioner did not function in the normal range, they should have pursued other testing." (Doc. # 30, at 4.) More specifically, Petitioner asserts that "[i]n 1998, when the crime was committed, studies

4

involving brain scans had been, and were being, conducted about the cognitive functioning of pedophiles." (*Id.* at 4.) Finally, Petitioner cites the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, arguing that those standards highlight the need for counsel to obtain "a thorough physical and neurological examination," as well as "[d]iagnostic studies, neuropsychological testing, [and] appropriate brain scans." (*Id.* at 5.)

Whether funds for neuropsychological testing are reasonably necessary to Petitioner's claims of ineffective assistance of counsel is a close question. On one hand, Petitioner faces an uphill battle to establish that counsel performed deficiently by failing to secure neuropsychological testing when Dr. Tureen, the defense expert, failed to recommend such testing. On the other hand, Dr. Tureen's report contained at least some indication that additional testing was warranted. For example, Dr. Tureen concluded that Petitioner functions within the borderline range of intellectual functioning. This conclusion at least suggests the need to dig deeper into Petitioner's cognitive functioning, especially in light of the fact that Petitioner's ability to knowingly and intelligently waive his constitutional rights was an important issue in this case. Furthermore, Petitioner's request for funds for a complete neuropsychological assessment is supported by Dr. Friday's recommendation that Petitioner undergo a full neuropsychological battery of tests.

The Court is satisfied that Petitioner has demonstrated that the services of a neuropsychologist are reasonably necessary. Without expressing any opinion as to the relative merits of any of Petitioner's claims, the Court finds that a nexus exists between Petitioner's funding request and potentially viable constitutional claims. The neuropsychological testing that Petitioner requests is specific, limited in scope, and based on the recommendation of a competent mental health expert. Accordingly, the Court **GRANTS** Petitioner's request for funds to employ a neuropsychologist to

5

perform additional neuropsychological testing.

## B. Motion For Funds To Employ A Clinical Psychologist

In addition to his request for funds to employ a neuropsychologist, Petitioner requests funds to rehire Dr. Timothy Rheinscheld, a clinical psychologist, to perform additional academic testing. (Doc. #27, at 4.) Petitioner Lynch states that "[e]ven though Petitioner believes he presented enough evidence [to the state courts] to demonstrate that he is mentally retarded, out of an abundance of caution, he seeks funding from this Court to employ Dr. Timothy Rheinscheld to administer additional testing." (*Id.* at 4-5.) According to Petitioner, this additional testing will support his first ground for relief, wherein he alleges that he is mentally retarded and ineligible for the death penalty, and his second ground for relief, wherein he alleges the ineffective assistance of counsel for failing to secure the appointment of a mental retardation expert to testify at the mitigation phase of his trial. (*Id.* at 5.)

The record reflects that Dr. Rheinscheld evaluated Petitioner and testified as a defense expert in connection with Petitioner's *Atkins* proceedings in state court.[2] Despite Dr. Rheinscheld's testimony, the state courts concluded that Petitioner failed to present adequate proof of mental retardation. (App. Vol. 10, at 292; App. Vol 13, at 151.) Petitioner argues that additional academic

---

[2] In *Atkins v. Virginia*, 536 U.S. 304 (2002), the United States Supreme Court held that the Eighth Amendment's prohibition of "cruel and unusual punishments" bars the execution of mentally retarded offenders. The *Atkins* Court did not set forth "definitive procedural or substantive guides for determining when a person who claims mental retardation will be so impaired as to fall within *Atkins*' compass." *Bobby v. Bies*, 129 S.Ct. 2145, 2150 (2009). Rather, the Supreme Court "left to the States the task of developing appropriate ways to enforce the constitutional restriction." *Id.* In *State v. Lott*, 97 Ohio St.3d 303, 779 N.E.2d 1011 (2002), the Ohio Supreme Court determined that a defendant alleging mental retardation must prove: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *Lott*, 97 Ohio St.3d at 305, 779 N.E.2d at 1014. The Ohio Supreme also announced "a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." *Id.*

testing, including testing pertaining to the IQ and adaptive skills criteria for determining mental retardation, "would lend further support to Dr. Rheinscheld's conclusion that Petitioner is mentally retarded." (Doc. # 27, at 5.)

Respondent opposes Petitioner's request for funds to rehire Dr. Rheinscheld. (Doc. # 28, at 3.) Respondent argues that the state courts provided Petitioner with a full and fair hearing regarding his *Atkins* claim, and Petitioner failed to meet his burden of proving, by a preponderance of the evidence, that he is mentally retarded. According to Respondent, Petitioner seeks to develop new evidence regarding his alleged mental retardation that he failed to develop and present to the state courts, and "Petitioner's request to fundamentally alter the facts submitted to the state court should be denied because he could have developed and presented such evidence in state court." (Doc. # 28, at 3.) Furthermore, Respondent argues that even if Petitioner develops the facts that he seeks, he cannot prevail on his first and second grounds for relief under the applicable AEDPA standard of review. (*Id.* at 5.) According to Respondent, Petitioner's motion fails to explain how the assistance of Dr. Rheinscheld will show that the state court determination is contrary to federal law, and "Petitioner's indications that he will develop evidence that was never developed or presented in state court does not further the question before this Court, because he cannot use evidence that was never presented in state court in an effort to show that the state court's determination was unreasonable." (*Id.*)

A request for funds must "demonstrate some factual allegation of a claim yet unexplored." *Cunningham v. Hudson*, No. 3:06cv0167, 2008 WL 2390777, *14 (N.D. Ohio June 9, 2008) (quoting *Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir. 1993)). *See also Foust v. Houk*, No. 1:06cv2625, 2008 WL 162786, *4 (N.D.Ohio Jan. 15, 2008) ("Although there are few cases defining when

appointment of experts is 'reasonably necessary,' the request must elucidate some factual allegation of a claim yet unexplored."). Furthermore, "expert services are not reasonably necessary if the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the expert's findings." *Powell v. Kelly*, 492 F. Supp. 2d 552, 557 (E.D. Va. 2007).

Applying that standard to this case, the Court cannot conclude that Petitioner is entitled to funds to rehire Dr. Rheincheld. It appears that the state courts afforded Petitioner a full and fair hearing in connection with his *Atkins* claim. Indulging Petitioner every benefit of the doubt, the Court finds that Petitioner's request for funds is speculative, at best, and amounts to nothing more than a request to embark on a fishing expedition in hopes of finding something additional to support his claim. The fact that the trial court rejected Petitioner's *Atkins* claim does not justify a request for funds during federal habeas review.

The Court is mindful of the importance of the constitutional rights at issue. However, Petitioner's only representation to this Court in connection with his request for funds is that "[e]ven though Petitioner believes he presented enough evidence to demonstrate that he is mentally retarded, out of an abundance of caution, he seeks funding from this Court to employ Dr. Timothy Rheinscheld to administer additional testing." (Doc. # 27, at 4-5.) This representation falls short of what is required to establish that funds are reasonably necessary to any of Petitioner's constitutional claims. Simply put, Petitioner has not attempted to establish what more he reasonably expects to obtain by rehiring his expert. Accordingly, the Court cannot conclude that Petitioner's request for funds is reasonably necessary, and the Court **DENIES** Petitioner's motion for funds to employ Dr. Rheinscheld.

## II. Conclusion

For the foregoing reasons, the Court **GRANTS** Petitioner's request for funds to employ a neuropsychologist and **DENIES** Petitioner's request for funds to employ a clinical psychologist. (Doc. # 27.)

Within thirty (30) days of the date of this Order, Counsel for Petitioner shall submit to the Court for final approval the specific funding amount requested, as well as the estimated time required to complete the testing and evaluation authorized by the Court. The Court reminds Petitioner of the spending limitations set forth in 18 U.S.C. § 3599(g).

**IT IS SO ORDERED.**

_____
**GREGORY L. FROST**
**United States District Judge**