IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RALPH LYNCH,

      Petitioner,

  v.                                          Case No. 2:07-cv-948
                                                JUDGE GREGORY L. FROST
STUART HUDSON, Warden,           Magistrate Judge Elizabeth P. Deavers

      Respondent.

## OPINION AND ORDER

      Petitioner is a prisoner sentenced to death by the State of Ohio. On September 28, 2011, this Court issued final judgment denying Petitioner's claims and dismissing his action. (ECF No. 69.) On March 20, 2015, the Court of Appeals for the Sixth Circuit issued an order granting Petitioner's motion to remand the case to this Court. (ECF No. 87.) This matter is before the Court for consideration of Petitioner's Brief (ECF No. 92), Respondent's Memorandum in Response (ECF No. 95), and Petitioner's Reply (ECF No. 100).

      The issue before the Court is whether it may consider the Affidavit and Report of neuropsychologist Dr. Michael Gelbort as it relates to the adjudication of several of Petitioner's claims. In its September 28, 2011 Opinion and Order denying habeas corpus relief, the Court determined, on the basis of *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), that it could not consider Dr. Gelbort's affidavit and report. (ECF No. 68, at Page ID # 1029-1035.) In *Pinholster*, the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S.Ct. at 1398. Section 2254(d) precludes a federal court from granting relief on any habeas corpus claim that the state courts

1

adjudicated on the merits unless the federal court determines that the state court's decision involved an unreasonable application of clearly established law or an unreasonable determination of the facts. Because the state courts did not have the benefit of Dr. Gelbort's affidavit and report when they ruled on Petitioner's claims, this Court held as follows:

> The Court will not consider Dr. Gelbort's materials for the purpose of determining whether any state court adjudication on the merits ran afoul of 28 U.S.C. § 2254(d). The Court does not read *Pinholster* to restrain it from considering Dr. Gelbort's materials either as to a claim that the state courts did not adjudicate on the merits or for the purposes of determining, independent of the § 2254(d) inquiry, whether habeas corpus relief should issue.

(ECF No. 68, at Page ID # 1035.)

Petitioner, having subsequently *attempted* to present Dr. Gelbort's affidavit and report to the state courts in an untimely third petition for postconviction relief, now urges this Court to consider Dr. Gelbort's materials in support of claims that he is intellectually disabled and ineligible for the death penalty (ground one); that he received ineffective assistance of counsel during mitigation phase of his trial (ground seven); that there is insufficient evidence to support his aggravated murder conviction (ground eight); that the prosecution engaged in misconduct by referencing facts not in evidence (ground nine); and that his *Miranda* waiver was involuntary (ground ten). (ECF No. 92, at Page ID # 1460-1487.) Respondent's position is that "[c]onsideration of the Gelbort affidavit is still prohibited because that evidence was not before the state court that adjudicated these claims on the merits." (ECF No. 95, at Page ID # 1910.) To that point, Respondent explains that Petitioner's third postconviction action presenting Dr. Gelbort's materials in support of Petitioner's claims was rejected by the state courts *not* on the merits, but as untimely under Ohio Rev. Code § 2953.23. (*Id.*) Petitioner argues in reply that this Court should consider Dr. Gelbort's materials because Petitioner, unlike the applicant in

2

*Pinholster*, did fairly present his new evidence and claims to the state courts. (ECF No. 100, at Page ID # 1946-1947.)

In his March 22, 2010 Motion to Expand or Supplement the Record, Petitioner summarized the import of Dr. Gelbort's affidavit and report as follows:

> The report of Dr. Gelbort lists neuropsychological testing that he conducted and his findings. The findings demonstrate that Petitioner's has [*sic*] long standing organic brain dysfunction and low cognitive functioning that pre-date the offense in this case. Basically, Petitioner does not have a normal functioning brain which impairs his coping skills and impulse control. The findings of Dr. Gelbort directly pertain to Petitioner's First, Seventh and Eleventh Grounds for Relief.

(ECF No. 37, at Page ID # 519.) In its May 24, 2010 Opinion and Order allowing expansion of the record with Dr. Gelbort's materials, this Court stated:

> Whether or to what extent Petitioner possessed diminished mental functioning that pre-dated and contributed to the offenses was a critical issue in both the culpability and mitigation phases of his capital trial. The materials that Petitioner seeks to add will assist the Court in deciding whether Petitioner is mentally retarded and therefore ineligible for the death penalty, whether Petitioner's trial attorneys performed unreasonably and to his prejudice in failing to develop mental health evidence in support of culpability-phase and mitigation-phase issues, and whether the trial court erred in admitting certain "bad character" evidence.

(ECF No. 49, at Page ID # 603-604.) But in its final decision denying habeas corpus relief, as noted above, this Court concluded that it could not consider Dr. Gelbort's materials in addressing the merits of Petitioner's claims. (ECF No. 68, at Page ID # 1035.)[1]

This Court granted Petitioner's request for funds to employ Dr. Gelbort (ECF No. 31) on October 29, 2009—approximately two years before *Pinholster* was decided. This Court granted

---

[1] The Court did consider Dr. Gelbort's affidavit and report in addressing Petitioner's claim that his trial attorneys were ineffective for failing to support their pretrial motion to suppress statements with evidence of Petitioner's intellectual deficiencies (ground five) because the state courts did not adjudicate that claim on the merits. (ECF No. 68, at Page ID # 1118.)

3

Petitioner's request to expand the record with Dr. Gelbort's affidavit and report on May 24, 2010—nearly one year before *Pinholster* was decided.

In response to Respondent's position that this Court is still precluded from considering Dr. Gelbort's affidavit and report, Petitioner essentially argues that because he, unlike the applicant in *Pinholster*, fairly presented to the state courts the evidence he wants this Court to consider, *Pinholster* should not prohibit that consideration. (ECF No. 100, at Page ID # 1946.) Relying on two 2014 Sixth Circuit decisions,[2] Petitioner likewise argues that the doctrine of procedural default—stemming from the state courts' conclusion that Petitioner did not satisfy Ohio's statutory requirements for filing an untimely and successive postconviction petition—does not bar this Court from considering Dr. Gelbort's materials. Petitioner explains:

> Lynch, unlike Bies and Gumm, developed new evidence during the federal habeas proceedings. The Sixth Circuit, like the district courts in *Bies* and *Gumm*, stayed the habeas proceedings to permit Lynch to return to state court to exhaust the new evidence. This Court should now, like the district courts and Sixth Circuit in Bies and Gumm, address the merits of the new evidence.

(ECF No. 100, at Page ID # 1947-1948.) To that point, Petitioner notes that Dr. Gelbort's findings have never been refuted by any court or the state. (*Id*. at Page ID # 1948.)

Petitioner's arguments are reminiscent of those he raised when Respondent moved, in light of *Pinholster*, for reconsideration of this Court's original decision (ECF No. 49) to expand the record with Dr. Gelbort's materials. Specifically, Petitioner argued then that "*Pinholster* does not restrict a diligent petitioner (such as Ralph Lynch) from developing new facts in support of his habeas claims when the state court's fact-finding process has been so inadequate that it amounts to a violation of due process." (ECF No. 66, at Page ID # 1015.)

---

[2] *Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014); *Bies v. Mitchell*, 775 F.3d 386, 396 (6th Cir. 2014).

4

Petitioner's arguments may be boiled down to two. First, he appears to be suggesting that there is a "due diligence" exception to *Pinholster*. Independent of *Pinholster*, the statutory provision controlling whether a habeas petitioner who did not develop the factual predicate for his or her claims in the state courts is entitled to an evidentiary hearing in federal court provides in relevant part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A)  the claim relies on—
>
> (i)  a new rules of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii)  *a factual predicate that could not have been previously discovered through the exercise of due diligence* . . . .

28 U.S.C. § 2254(e)(2) (emphasis added); *see e.g., Landrum v. Mitchell*, 625 F.3d 905, 924 (6th Cir. 2010) ("We hold that the district court did not abuse its discretion in denying Landrum's motion to expand the record because he has not shown that the factual predicate of Hill's affidavit could not have been discovered previously through the exercise of due diligence.") The Supreme Court has held that "[d]iligence for purposes of the opening clause depends on whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have it, upon whether those efforts could have been successful." *Williams v. Taylor*, 529 U.S. 420, 435 (2000).

Petitioner is essentially asking the Court to apply a principle from one area of habeas corpus law concerning factual development to a post-*Pinholster* scenario. But *Pinholster* does

5

not contain a due diligence exception. That is, Petitioner has not cited and the Court is not aware of any language in either *Pinholster* itself or any decision interpreting *Pinholster* suggesting that a petitioner who diligently attempts to convince the state courts to consider new evidence, but ultimately does not succeed, can escape the reach of *Pinholster* to have a federal habeas court consider his new evidence. By contrast, this Court is aware of at least one decision precluding, on the basis of *Pinholster*, consideration of new evidence that state procedural rules prevented the state courts from considering. *See Pellecier v. Palosaari*, No. CV-05-159, 2012 WL 78076060, at *11 (D. Ariz. May 3, 2012) ("Because the state court did not consider the evidence presented in the second PCR petition, this Court cannot consider it when evaluating the merits under (d)(1)."). *Pinholster* provides for no such exception and this Court will not read one into the decision.

Second, Petitioner implies that the adequacy (or inadequacy, to be precise) of a state's postconviction fact-developing process informs whether *Pinholster* applies to prohibit a federal court from considering new evidence that a prisoner develops during habeas corpus proceedings. Neither *Pinholster* nor any decisions applying *Pinholster* have tied *Pinholster*'s applicability to the quality or availability of the state's postconviction process, and this Court will not assume that such a significant qualification was implied. This Court is aware of at least two decisions rejecting that precise argument. *See Caudill v. Conover*, 871 F. Supp. 2d 639, 648 (E.D. Ky. 2012) ("Petitioner has not directed the Court to any Supreme Court decisions holding that a state's failure to permit discovery in post-conviction proceedings violates due process or otherwise takes a case outside the scope of *Pinholster*."); *Ross v. Thaler*, 511 F. App'x 293, 305

6

(5th Cir. 2013) ("We are further unpersuaded by Ross's argument that *Pinholster* applies only when a fair and complete state court record is before the federal court.").

The *Gumm* and *Bies* decisions that Petitioner cites are distinguishable and lend no support for an argument that this Court should consider Dr. Gelbort's materials. *Gumm v. Mitchell* involved a habeas petitioner who had returned to state court to pursue an "*Atkins*" proceeding to establish that he was intellectually disabled and therefore ineligible for the death penalty. In so doing, the petitioner also raised new claims unrelated to his *Atkins* claim. The state courts touched upon those claims but ultimately concluded that the claims were not properly before the state courts because the petitioner had not satisfied Ohio's statutory provisions for filing postconviction claims that were untimely and/or successive. When the petitioner returned to his habeas proceedings, the federal courts concluded that because Ohio had not adjudicated those new claims on the merits, the federal courts were free to review those claims *de novo*. *Gumm*, 775 F.3d at 362.

In *Bies v. Sheldon*, the habeas petitioner had returned to state court, first to present in a successive postconviction petition *Brady* allegations that the petitioner had discovered for the first time during his habeas corpus proceedings and then to pursue an *Atkins* claim. The state courts granted relief on his *Atkins* claim and vacated his death sentence, but concluded that they could not reach the merits of the *Brady* claims because the petitioner had not satisfied the statutory provisions for filing an untimely, successive postconviction action. When the petitioner returned to his habeas proceeding, the federal courts determined that they could review the *Brady* claims *de novo* because the state courts has not adjudicated those claims on the merits, and that procedural default did not preclude consideration of the claims because the state courts

7

had erred in determining that the petitioner did not satisfy the requirements set forth in Ohio Rev. Code § 2953.23.  *Bies*, 775 F.3d at 395-96.

*Gumm* and *Bies* are inapposite because neither decision involved the application of *Pinholster*.  That is, neither decision addressed how to treat in a pending habeas corpus action new evidence in support of claims previously raised in the state courts and adjudicated on the merits.  The non-*Atkins* claims that Gumm and Bies presented to the state courts and then presented in their habeas corpus proceedings were new claims that those petitioners had never before presented to the state courts.  By contrast, the claims that Petitioner asks this Court to consider anew in light of Dr. Gelbort's findings are claims that were already presented to, and adjudicated by, the state courts.  And, as was the case in *Pellecier v. Palosaari* above, nothing about Petitioner's unsuccessful attempt to re-present those claims in light of Dr. Gelbort's findings changes that fact.  Petitioner, unlike Gumm and Bies, is asking this Court to consider new evidence in ruling on claims previously adjudicated by the state courts—something *Pinholster* unmistakably precludes.

Based on the foregoing, it is unnecessary for the Court to address the parties' arguments concerning whether or to what extent Dr. Gelbort's materials support Petitioner's claims.  That said, the Court is compelled to take note of one argument that Petitioner advances in support of his claim that he is intellectually disabled and therefore ineligible for the death penalty.  Petitioner asserts in his Reply that even if *Pinholster* precludes consideration of Dr. Gelbort's materials on that issue, this Court should nonetheless re-visit its decision denying his claim because "the Supreme Court cases decided since this Court's initial opinion support the conclusion that Lynch suffers from significantly subaverage intellectual functioning."  (ECF No.

8

100, at Page ID # 1949 (discussing *Hall v. Florida*, 134 S.Ct. 1986 (2014); and *Brumfield v. Cain*, 135 S.Ct. 2269 (2015).)  The Court will not address that argument, as it falls outside the scope of the Sixth Circuit's limited remand.

For the foregoing reasons, the Court adheres to its original decision that *Pinholster* precludes the Court from considering Dr. Gelbort's materials as to any of Petitioner's claims that the state courts adjudicated on the merits.  (ECF No. 68, at Page ID # 1029-1035, 1059 n.3, 1061-1062 n.4, 1067 n.5, 1070 n.6, 1075 n.7, 1143 n.13, 1171 n.17.)

**IT IS SO ORDERED**.

  /s/ Gregory L. Frost  
GREGORY L. FROST  
UNITED STATES DISTRICT JUDGE