IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

RALPH LYNCH,

            Petitioner,      :      Case No. 2:07-cv-948

  - vs -                               District Judge Michael R. Barrett
                                       Magistrate Judge Michael R. Merz

STUART HUDSON, Warden,

                                   :

            Respondent.

## SUPPLEMENT TO SUBSTITUTED REPORT AND RECOMMENDATIONS

This capital habeas corpus case is before the Court on remand from the Sixth Circuit Court of Appeals (ECF No. 87).

**Procedural History of the Remand**

At the time of remand, the case was assigned to District Judge Gregory Frost, who has since then retired. Before his retirement, however, Judge Frost decided what he considered to be the only issue on remand, to wit, whether this Court could consider the Affidavit and Report of Dr. Michael Gelbort in determining whether Petitioner was intellectually disabled. Judge Frost decided *Cullen v. Pinholster*, 563 U.S. 170 (2011), still precluded consideration of those materials, despite Petitioner's attempt to present them to the Ohio courts in a successive post-conviction petition. *Lynch v. Hudson,* 182 F. Supp. 3d 787, 792 (S.D. Ohio 2016).

1

After Judge Frost retired, the case was reassigned to Judge Michael Barrett (ECF No. 102) and referred to the undersigned (ECF No. 103). Petitioner then moved, within the time allowed by Fed. R. Civ. P. 59(e), to alter or amend Judge Frost's decision (ECF No. 104). Petitioner argued Judge Frost committed clear error when he declined to consider the application to this case of *Hall v. Florida*, 134 S. Ct. 1986 (2014), and *Brumfield v. Cain*, 135 S. Ct. 2269 (2015). Judge Frost had refused to consider the applicability of those cases because he considered that question outside the scope of the remand. The undersigned concluded, however, that the remand was general, not limited, a conclusion to which neither party has objected (Substituted Report and Recommendations ("Substituted R&R"), ECF No. 118, PageID 2022).

In arguing clear error in Judge Frost's decision, Petitioner relied on *Van Tran v. Colson*, 764 F.3d 594 (6th Cir. 2014), and *Williams v. Mitchell*, 792 F.3d 606 (6th Cir. 2015), to prove that *Hall* and *Brumfield* are to be applied retroactively to cases pending on collateral attack (ECF No. 104, PageID 1969). In the Substituted R&R to which this is a Supplement, the undersigned analyzed *Van Tran* and *Williams* and found they were equivocal on the retroactivity question (ECF No. 118, PageID 2022-25). The Court then concluded that, because this case is already on appeal, it should treat *Hall* and *Brumfield* as hypothetically applicable.

> If there is a firm holding by the Sixth Circuit or the Supreme Court that *Hall* and *Brumfield* are to be applied retroactively before this case reaches final judgment on appeal, the Sixth Circuit will already have the benefit of this Court's analysis of the impact of those two cases and can accept or reject that analysis without further remand. Conversely, if it is firmly decided that *Hall* and *Brumfield* are not to be applied retroactively, the only harm done will have been this Court's having spent time needlessly deciding their impact.
>
> The Magistrate Judge therefore recommends that Judge Frost's April 21, 2016, Opinion and Order be amended to permit this Court to consider the impact of *Hall* and *Brumfield* as if they apply retroactively.

*Id.* at PageID 2025. To position the case for this Supplement, Petitioner was to file "a memorandum arguing how *Hall* and *Brumfield* impact Lynch's case." *Id.* at PageID 2026. Petitioner has done so (the "Impact Memorandum," ECF No. 122); the Warden has responded (ECF No. 126), and Petitioner has filed a Reply (ECF No. 129).

# Analysis

**The Holdings in *Hall* and *Brumfield***

Lynch's counsel believe that "[t]he Magistrate Judge has already ruled that *Hall* and *Brumfield* apply retroactively to this case." (Reply, ECF No. 129, PageID 9374.) **That is completely wrong**. The Magistrate Judge believes that *Hall* and *Brumfield* should **not** be applied retroactively in this case because both of them were decided after the Ohio courts decided in this case that Lynch was not intellectually disabled.

When a state court decides on the merits a federal constitutional claim (e.g. an inmate's intellectual disability claim) later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412*.*

3

Nevertheless, because *Van Tran* and *Williams, supra,* are equivocal on the issue of retroactivity, the Substituted R&R recommends treating *Hall* and *Brumfield* **as if** (i.e. hypothetically) they applied retroactively and determining what the effect of that would be, in order to save a possible additional remand in this case. That is what the Court intended the current filings to present.

To determine what the impact of *Hall* and *Brumfield* would be if they applied retroactively, it is necessary to separate the holdings of those cases from the dicta. In *Hall* the Supreme Court held that Florida's threshold requirement of a tested IQ score of 70 was unconstitutional. Justice Kennedy in the majority opinion described the holding this way:

> Florida law defines intellectual disability to require an IQ test score of 70 or less. If, from test scores, a prisoner is deemed to have an IQ above 70, all further exploration of intellectual disability is foreclosed. This rigid rule, the Court now holds, creates an unacceptable risk that persons with intellectual disability will be executed, and thus is unconstitutional.

134 S. Ct. at 1990. The Court conducted an extensive analysis of what the States had done about defining intellectual disability in the wake of *Atkins v. Virginia*, 536 U.S. 304 (2002), and found that only two States – Florida and Virginia – had adopted a rigid threshold of 70. *Id.* at 1998. Ohio is not mentioned in the *Hall* decision. Thus even if *Hall* were to be applied retroactively to this case, the Ohio courts' decision would not be contrary to the holding in *Hall* because Ohio does not have, by statute or judicial interpretation, a rigid 70-point IQ test for intellectual disability.

Rather, Ohio's standard for intellectual disability in an *Atkins*' claim is "an individual is mentally retarded[1] for *Atkins*' purposes if he or she demonstrates all three of the following: (1)

---

[1] "Rosa's Law," S.2781, Public Law No. 111-256, was signed by President Obama on October 5, 2010, and replaced the term "mentally retarded" which has come to be considered disrespectful, with "intellectual disability." See https://www.congress.gov/bill/111th-congress/senate-bill/2781, last visited February 2, 2017.

4

significantly subaverage intellectual functioning; (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction; and (3) onset before the age of 18." *State v. Lott*, 97 Ohio St. 3d 303, 305 (2002), quoted by Judge Frost in deciding the *Atkins* claim at issue in this case. *Lynch v. Hudson*, 2011 U.S. Dist. LEXIS 110652 (S.D. Ohio Sept. 28, 2011). In place of a rigid cut-off, the *Lott* Court held there was a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70. *Lott*, 97 Ohio St. 3d at 305.

In *Brumfield*, a Louisiana death-row inmate sought a post-*Atkins* opportunity to prove he was intellectually disabled.

> Without affording him an evidentiary hearing or granting him time or funding to secure expert evidence, the state court rejected petitioner's claim. That decision, we hold, was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §2254(d)(2). Petitioner was therefore entitled to have his *Atkins* claim considered on the merits in federal court.

135 S. Ct. at 2273. Because Brumfield had been denied a hearing in the Louisiana courts, the habeas court granted him an evidentiary hearing[2] and found the Louisiana state courts' decision violated both § 2254(d)(1) and (d)(2). The Fifth Circuit reversed on both prongs, but the Supreme Court only decided the 2254(d)(2) prong.[3] The Supreme Court found the state trial court's rejection of Brumfield's request for a hearing was unreasonable because the IQ scores he presented were "entirely consistent with intellectual disability" and because the record in fact

---

[2] The Supreme Court found this was proper despite *Pinholster*, *supra*, because federal habeas courts may take new evidence when 28 U.S.C. § 2254(d) "does not bar relief." 135 S. Ct. at 2276.

[3] "Before this Court, Brumfield advances both of the rationales on which the District Court relied in holding §2254(d) to be satisfied. Because we agree that the state court's rejection of Brumfield's request for an Atkins hearing was premised on an "unreasonable determination of the facts" within the meaning of §2254(d)(2), we need not address whether its refusal to grant him expert funding, or at least the opportunity to seek pro bono expert assistance to further his threshold showing, reflected an "unreasonable application of . . . clearly established Federal law," §2254(d)(1)." 135 S. Ct. at 2276.

5

raised questions about his "impairment . . . in adaptive skills." *Id.* at 2277, 2279.

The holding in *Brumfield* is that, on the record before it, the Louisiana trial court violated 28 U.S.C. § 2254(d)(2) by not giving the inmate a hearing on his intellectual disability claim. If *Brumfield* were applied retroactively to this case, it would not have any impact because the Ohio courts gave Lynch a hearing on his post-*Atkins* claim, consistent with the procedural guidelines and substantive guidance the Ohio Supreme Court gave in *Lott*, *supra*.

**Petitioner's Claims in the Impact Memorandum**

**1.      Significantly Subaverage Intellectual Functioning**

In his Impact Memorandum Petitioner Lynch claims or appears to claim that those cases hold all sorts of things that are far beyond anything this Court can identify as holdings of those cases. What follows is a catalogue of those claims.

1.      Petitioner claims *Hall* and *Brumfield* hold that "the presumption of significantly sub-average intelligence is to be applied in favor of the defendant, when his IQ score is 75 or lower." (Memo, ECF No. 122, PageID 9322.) No pinpoint citation for these supposed holdings in those two cases is given.

2.      Since *Atkins* and *Lott*, both the American Association on Intellectual and Developmental Disabilities ("AAIDD") and the American Psychological Association ("APA) have revised their definitions of intellectual disability. (Memo, ECF No. 122, PageID 9322, citing *Intellectual*

6

*Disability* (11th ed. 2011) and *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013)("*DSM-5*"). Petitioner argues that he "satisfies all three prongs that are required for a finding of intellectual disability, under both definitions." *Id.* Lynch does not even make an argument as to how *Hall* and *Brumfield* require this Court to reevaluate the Ohio courts' decision under associational definitions arrived at years after the Ohio courts completed their evaluation of his intellectual disability claim.

3. "In 2010, Lynch scored a 70 on the IQ test administered in habeas proceedings." *Id.*, citing ECF No. 37, Ex. A. The referenced Exhibit A is the Gelbort Affidavit that Judge Frost excluded under *Pinholster*. No holding in *Hall* or *Brumfield* undermines Judge Frost's conclusion, even if they are eventually held to be retroactively applicable..

4. "The interpretation of an individual's IQ test [score] must take into account the SEM [standard error of measurement]." (ECF No. 122, PageID 9323, *citing Hall*, 134 S. Ct. at 1995.) This is the rationale for the *Hall* Court's having rejected Florida's irrebuttable presumption for "refusing to recognize that the score is, on its own terms, imprecise." Lynch then argues that because Judge Frost "relied on the State's expert, Dr. Nelson, who concluded that a person with an IQ score above 70 does not have significantly sub-average intellectual functioning to deny Lynch's claim on the first prong of the test for intellectual disability," Judge Frost's conclusion is unreasonable in light of *Hall*. (Memo, ECF No. 122, PageID 9324, citing Decision and Order of September 28, 2011, ECF No. 68, PageID 1053-54).

    Petitioner misstates Judge Frost's summary of Dr. Nelson's testimony.

> Dr. Nelson confirmed that he had reviewed the test results and raw data from Dr. Tureen's administration of the WAIS test to

7

> Petitioner in 1999 and testified that according to that test, Petitioner achieved a 79 on the verbal component, a 68 on the performance component, and full scale score of 72. (*Id*. at 107.) Those scores, according to Dr. Nelson, placed Petitioner in the borderline range of intellectual functioning. (*Id*.) Dr. Nelson explained the presumption that typically, an IQ score below 70 falls in the mental retardation range while an IQ score above 70 does not.

(ECF No. 68, PageID 1053-54.)   Evaluating all the testimony on sub-average intellectual functioning, Judge Frost concluded:

> The Court considers first the state courts' determination that Petitioner failed to satisfy the first component of the mental retardation definition, sub-average intellectual functioning. All three experts who based their opinions on the WAIS–III test that Petitioner took in 1999. Drs. Tureen, Rheinscheld, and Nelson agreed that Petitioner achieved a 72, a full-scale score in excess of 70. Dr. Tureen, who administered the WAIS-III to Petitioner in 1999, testified that Petitioner achieved a full-scale score of 72. (Tr. Vol. 9, at 1634.) Dr. Rheinscheld, who reviewed Dr. Tureen's test results and raw data, also testified that Petitioner achieved a full-scale score of 72. (Tr. Vol. 11, at 67.) The state's expert, Dr. Nelson, who also found valid Dr. Tureen's test results and raw data, testified that Petitioner's full-scale score was 72. (Tr. Vol. 11, at 107.) Because all three experts agreed that Petitioner's full-scale IQ score was in excess of 70, it is difficult to characterize as unreasonable the state trial court's determination that according to the Lott presumption, Petitioner was not mentally retarded. (App. Vol. 12, at 293-95.)
>
> Petitioner relies heavily on the standard error of measurement in arguing that because his score was falsely elevated, the trial court erroneously applied the Lott presumption. According to Dr. Rheinscheld's testimony, the standard error of measurement "is the error in any kind of psychological test that involves human behavior, basically." (Tr. Vol. 11, at 18.) Dr. Nelson described the standard error of measurement in terms of a "confidence band" by which an expert could be 95 percent confident that a person's IQ score was within a range of plus or minus five points from the person's actual score, i.e., between 67 and 77 for a full-scale score of 72. (Id. at 104-05.) Petitioner argues that applying the standard error of measurement downward results in an IQ score as low as 67. But equally plausible according to the evidence in the record is that an application of the standard error of measurement could

8

>  result in an IQ score as high as 77. During Petitioner's Atkins hearing, both experts agreed that the standard error of measurement applicable to Petitioner's score of 72 was plus or minus five points. (Tr. Vol. 11, at 18-19, 104-105.) Both experts testified that Petitioner's IQ score was anywhere within a range of 67 to 77. (Id.) Neither expert suggested that one end of that range was more likely than the other. Thus, Petitioner's argument that his IQ was closer to 67 than 72 finds no support in the record or the accepted science.

*Id.* at PageID 1071-72.  Thus Judge Frost considered the evidence from both sides' experts and found that they agreed on the standard error of measurement and that the single IQ test Lynch took yielded a valid score of 72 which meant that the result could have been as high as 77 and as low as 67.  Given that the SEM is + or – five points, it is more probable that Lynch's score was under 70 than that it was over 70.  Nothing in *Hall* or *Brumfield* or in the applicable science requires the state courts to conclude the score is at the low end of the SEM range.

5. "The interpretation of an individual's IQ score must also account for the Flynn effect." (ECF No. 122, PageID 9325, citing *Intellectual Disability* and *DSM-5*.)  Nothing in *Hall* or *Brumfield* commands accounting for the Flynn effect, even though it is discussed.

6. "A person with an IQ up to 75 points has significantly sub-average intellectual functioning."  (ECF No. 122, PageID 9326, *citing Hall*, 132 S. Ct. at 1998-99, and *Brumfield*, 135 S.Ct. at 2278, as well as *Intellectual Disability, DSM-5*, *State v. Gumm*, 864 N.E. 2d 133, 139 (1st App. Dist. 2006) and *State v. Greer*, Case No. CR 1985 02 0176 (Summit Cty. C.P., May 21, 2008)(unreported, copy at ECF No. 122-1, PageID 9336, et seq.)  The last four of these authorities are obviously not Supreme Court decisions clearly establishing the law as of the time the Ohio courts decided Lynch's post-conviction petition.  The quoted language does appear in

9

*Hall*, but is itself a quotation from *Atkins*. In *Atkins* it was not a holding, but an observation: "an IQ between 70 and 75 or lower … is typically considered the IQ cut-off score for the intellectual function prong of the mental retardation definition." 536 U.S. at 309, n.5.

So far as this judge is able to discern, Lynch's counsel have no theory about what propositions in *Hall* and *Brumfield* are holdings and what are dicta. Admittedly, it is difficult to tell the difference in some judicial opinions. *See The Law of Judicial Precedent*, Garner, et al., § 4, Dicta v. Holdings (2016). But the difficulty does not excuse the failure to make an attempt and the Supreme Court has told us that, under § 2254(d)(1), only holdings count.

## II. Significant Limitations in Adaptive Skills

Petitioner devotes argument in his Impact Memorandum to the second prong of the Lott test for intellectual disability, to wit, significant limitations in two or more adaptive skills (ECF No. 122, PageID 9328-30). Judge Frost determined that the Ohio courts' conclusion on this prong of the test was an unreasonable determination of the facts in light of the evidence presented (Opinion and Order, ECF No. 68, PageID 1084-85). Petitioner agrees that the Court correctly determined this question and on that point does not seek any change in Judge Frost's Order (ECF No. 122, PageID 9329).

## III. Onset Before Age Eighteen

The third *Lott* criterion for intellectual disability is onset before age eighteen. *State v.*

*Lott*, 97 Ohio St. 3d 303, 305 (2002). As to this component of the test, Judge Frost wrote "the Court is satisfied that the trial court's finding that Petitioner failed to meet this component was reasonable in light of the record. . . . The record supports the trial court's findings both that the evidence was sparse and that the issue was irrelevant." (Order, ECF No. 68, PageID 1085). In particular, the judge noted that the burden of proof was on the Petitioner and very little evidence had been presented. *Id.* at PageID 1087. He also noted it would have been illogical for the trial court to attempt to decide the onset date of a condition which it found did not exist. *Id.*

In arguing this third prong in his Impact Memorandum, Lynch relies on the discussion of this prong in *Intellectual Disability; Gumm*, *supra*; *Brumfield* on remand in the Fifth Circuit, 808 F.3d 1041, 1065 (5th Cir. 2015); and *State v. White*, 118 Ohio St. 3d 12 (2008) (ECF No. 122, PageID 9330-34). To point out the obvious, none of these authorities is a United States Supreme Court decision in place when the Ohio courts decided Lynch's post-conviction petition. Even if *Hall* and *Brumfield* are to be applied retroactively, the holdings in those two cases do not compel use of any of these authorities.

### IV. Lynch's Conclusion to His Impact Memorandum

In the Conclusion to the Impact Memorandum, Lynch's counsel write:

> Testimony and evidence Lynch submitted post-trial supports a diagnosis of intellectual disability. The information was derived from a variety of sources. *See, Intellectual Disability*, p. 100. The information from the variety of sources was consistent with Lynch having intellectual disability. Medical professionals term this consistency "convergent validity." *White* at 910. The test results, documentation, and anecdotal evidence support but a single conclusion: Lynch has now, and had before the age of eighteen, an intellectual disability.

> Lynch's death sentence violates the Eighth Amendment of the United States Constitution. Atkins, 536 U.S. at 318. Therefore, based on the arguments presented in this Brief and in the Merit Brief (ECF No. 56, PAGEID# 634-55), Lynch requests this Court grant him a conditional writ ordering that his death sentence be vacated.

(ECF No. 122, PageID 9334.)

This Conclusion makes evident what the careful reader of the Impact Memorandum would have found implicit all along:  Lynch believes that somehow *Hall* and *Brumfield* entitle him to a *de novo* reconsideration in this habeas court of his intellectual disability claim, based on (1) evidence not before the state courts, i.e., Dr. Gelbort's Affidavit and Report, and (2) evaluation of the evidence based on authorities other than United States Supreme Court holdings that were not in place when the state courts decided the claim.

**The Warden's Opposition**

In opposition, the Warden first claims that the retroactivity of *Hall* and *Brumfield* is immaterial under 28 U.S.C. § 2254 as amended by the AEDPA (ECF No. 126, PageID 9364, citing *Greene v. Fisher*, 565 U.S. 34 (2011).  The citation is apt:  the Sixth Circuit has held the reasonableness of the state court decisions must be measured against Supreme Court precedent as of the time the state court enters its decision.  *Gover v. Perry*, 698 F.3d 295 (6th Cir. 2012), *Bunch v. Smith*, 685 F.3d 546, 549 (6th Cir. 2012), both *citing Greene v. Fisher*, 565 U.S. 34 (2011).  See also *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011)(noting that "[s]tate-court decisions are measured against this Court's precedents as of 'the time the state court renders its decision,'" quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).  If *Hall* or *Brumfield* had adopted a new substantive rule or a "watershed" procedural rule as those terms are used in

*Teague v. Lane*, 489 U.S. 288 (1989), that would be a different story. *See Greene,* 465 U.S. at 38-39. But they plainly did not.

The Warden also argues that *Van Tran* and *Williams*, *supra,* do not hold that *Hall* and *Brumfield* are to be applied retroactively (ECF No. 126, PageID 9365-67). As indicated above in numerous place, the Magistrate Judge agrees and has, in this Supplement, only accepted their hypothetical retroactivity to avoid another appeal.

Finally, the Warden argues that even if *Hall* and *Brumfield* were retroactively applicable, they would not change the result because they held that a State may not apply an irrebuttable presumption against intellectual disability based on an IQ score of 70 and Ohio has never had such a presumption (ECF No. 126, PageID 9367-68). The Magistrate Judge agrees, as set forth above, that this is a correct reading of the holding in *Hall* and *Brumfield* did not expand that holding in a way that would invalidate Judge Frost's conclusion.

**Petitioner's Reply**

Lynch replies that "Hall and Brumfield did not change, modify or add to the holing [sic] in Atkins. The Supreme Court in those cases simply re-emphasized that the procedures the states established to assess intellectual disability claims must be consistent with professional standards and practices." (ECF No. 129, PageID 9373.) Lynch apparently reads this to mean that if a past state adjudication of an intellectual disability claim did not follow present updated professional standards, the past adjudication must be set aside. This is not retroactive application of Supreme Court precedent, but retroactive application of professional publications. Is every death row inmate adjudicated as not intellectually disabled before the DSM-5 was published entitled to a

new adjudication?

**Conclusion**

For the reasons set forth above and in the Substituted Report and Recommendations, this Court should DENY Petitioner's Motion to Amend (ECF No. 104) and advise the Sixth Circuit that the remand is completed so that it may resume consideration of the case on the merits.

February 3, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).